**In re Elioe E. BURGOS and Vielka E. Burgos, Debtors.**

**No. 99–2731–BKC–3F3.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

March 15, 2000.

Mamie L. Davis, Jacksonville, FL, trustee.

Michael May, Deland, FL, for Debtors.

Rodger Friedline, Jacksonville, FL, Additional Attorney for Debtors.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Case is before the Court on the Objection to Confirmation of Debtors' Second Amended Chapter 13 Plan filed by Mamie L. Davis, the standing Chapter 13 Trustee ("Trustee"), on October 28, 1999. On January 18, 2000 the Court conducted a confirmation hearing and at the conclusion of that hearing the Court took Trustee's objection under advisement and asked Trustee and counsel for Elioe and Vielka Burgos ("Debtors") to submit proposed findings of fact and conclusions of law as to the issue of whether Debtors' payment of private school tuition is a reasonably necessary expense. Upon review of the submissions and applicable law, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

On April 16, 1999 Debtors filed a voluntary petition under Chapter 13 of the Bankruptcy Code. Dr. Burgos is a physician employed by Florida Healthcare Plans and currently earns approximately $8,803.88 per month or $105,646.56 per annum.[1] After payroll deductions, Debtors' total combined monthly income is $7,541.08. Debtors originally listed monthly expenses of $3,042.00; leaving $4,499.08 to be paid into their Chapter 13 Plan. Included in these monthly expenses is the $590.00 monthly school tuition payment at issue.[2] Dr. Burgos originally tes-

---

1. Dr. Burgos listed earnings of $174,466.44 in 1998 and $140.662.43 in 1997. He claims his decreased income is a result of his becoming affiliated with an HMO provider.

2. Debtors currently support six (6) children: Nadine Burgos (age 24) and Elioe Burgos, Jr. (age 21), both of whom are in college; Anabelle Burgos (age 13) and Daniel Burgos (age

tified that the tuition was for his two adult daughters in college. Mrs. Burgos, who handles the household finances for the family, subsequently testified that her husband misstated the purpose of the $590.00 expense. Mrs. Burgos stated that the $590.00 payment was tuition for Debtors' two minor children to attend Warner Christian Academy, a private school. Mrs. Burgos stated that their older children pay for their own college education through financial aid and student loans, although they continue to reside at home.

Debtors filed for bankruptcy protection to save their house, valued at $275,000.00. Debtors' monthly mortgage payment is $2,641.27 and is currently being paid through their plan. Debtors are bringing their pre-petition mortgage arrearage of $21,210.16 current through their plan, providing for the retention of a 1995 Mazda at $675.67 per month, and surrendering a 1997 Oldsmobile Van. Trustee provided that Debtors have unsecured claims totaling $92,909.91.[3]

On October 18, 1999 Trustee, filed an objection to confirmation of Debtors' Second Amended Chapter 13 Plan claiming that Debtors were not applying all of their "disposable income", as defined by 11 U.S.C. § 1325(b)(1)(B), toward their plan. Trustee argued that Debtors could apply more money toward plan payments resulting in a greater distribution to unsecured creditors.

On January 24, 2000, per this Court's instruction at the January 18, 2000 hearing, Debtors filed an Amendment to Bank-

ruptcy Schedule J that provided that $4,849.08 would be paid monthly into their sixty (60) month plan, a $450.00 monthly increase.[4] This results in an estimated total disbursement of $290,944.80. Debtors claim that their unsecured creditors will receive $61,785.74 over the life of the plan, representing payment of approximately seventy percent (70%) of their unsecured indebtedness.·

Debtors claim that the expenditure for education of two minor children is reasonably necessary. Additionally, Debtors urge the Court to consider the totality of their plan, including their sixty (60) month plan, the surrender of one automobile, the percent of unsecured debt to be paid, the absence of non-dischargeable Chapter 7 debt, and that Debtors proposed their plan in good faith.

## CONCLUSIONS OF LAW

■ The Trustee contends that Debtors' payment of private school tuition is not a reasonably necessary expense and constitutes disposable income, and therefore, Debtors are not committing all of their disposable income to the Plan. Section 1325(b) requires Chapter 13 debtors to either pay 100 percent of unsecured claims or use all of their disposable income to fund their plan. Section 1325(b)(1)(B) sets out the disposable income test and disposable income is defined in Section 1325(b)(2)(A). Section 1325(b) of the Bankruptcy Code provides that:

10), both of whom are in middle school; and their two grandchildren, Tajia Burgos and Nubia Burgos, children of Nadine Burgos.

3. As to the accrual of this unsecured debt, Debtor testified that the majority of the debt incurred was to furnish their new home. Furniture listed in Debtors' schedules was valued at approximately $7,000.00. Mrs. Burgos was unclear as to why the furniture had experienced such drastic depreciation.

4. The court held two hearings on the objection. At the first hearing held on December

14, 1999, upon documents filed and testimony elicited, the Court found that Debtors' expenses were excessive and that their plan was filed with a lack of good faith in that all disposable income was not being used to fund the plan. The Court, not being inclined to dismiss the action without allowing Debtors time to review matters, continued the hearing until January 18, 2000 so Debtors could either propose a new plan, dismiss or convert the case.

(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor, including charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to a qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)) in an amount not to exceed 15 percent of the gross income of the debtor for the year in which the contributions are made; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325(b) (West 1999).

There are two lines of authority under the disposable income test. The majority position holds that the test requires courts to assess a debt to determine whether that debt is reasonably necessary for the maintenance or support of debtor or debtor's dependents. *In re Humphrey*, 165 B.R. 508, 510 (Bankr.M.D.Fla.1994). Following the majority view, if a debt is determined to be unnecessary for maintenance or support, but is instead itself funded by disposable income, the plan cannot be confirmed because that plan fails to comply with Section 1325(b)(1)(B). *Id.*

The minority position holds that as long as debtors are using all of their disposable income to fund the plan, Section 1325(b)(1)(B) is satisfied and the propriety of the debt should be analyzed within the confines of the good faith standard of § 1325(a)(3). *Id.*

> [T]he minority view is the better view because it comports with the plain language of the code which only requires the debtors use all of their disposable income to fund the plan and does not refer to the type of debt that may be paid through the plan. This construction also accords with the purpose of chapter 13—to allow debtors to retain their assets while paying their creditors more than would be available in chapter 7. *In re Kitchens*, 702 F.2d 885 (11th Cir.1983). In addition, the good faith inquiry is better suited to address the merit of a debt. The good faith inquiry requires the court to make a value judgment just as the inquiry into whether a debt is of a type that should be paid through a chapter 13 plan requires the court to make a value judgment. Thus the good faith determination is better suited to assess the propriety of a debt than is the disposable income analysis.

*Humphrey*, 165 B.R. at 510. *Cf. Kitchens v. Georgia R.R. Bank & Trust Co. (In re Kitchens)*, 702 F.2d 885, 888–89 (11th Cir. 1983).[5]

---

**5.** Though not meant to be exclusive, the factors listed in *Kitchens* are:

(1) the amount of the debtor's income from all sources;

(2) the living expenses of the debtor and his dependents;

(3) the amount of attorney's fees;

(4) the probable or expected duration of the debtor's Chapter 13 plan;

(5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

(6) the debtor's degree of effort;

(7) the debtor's ability to earn and the likelihood of fluctuation in his earnings;

When applied to this case these positions become intermingled. The majority view asks whether an individual debt, payment of private school tuition in this case, is reasonably necessary. If not reasonably necessary, all disposable income is not contributed to the plan and therefore, the plan cannot be confirmed.

The minority view allows debtors to maintain payment of unnecessary expenses as long as they are funded through the plan and will determine whether the good faith requirements are met if an objection is raised. In *Humphrey*, the debtors provided for payment of nonresidential real property through their plan. 165 B.R. at 510. The court found that such an expense was not reasonably necessary for the maintenance or support of the debtors or debtors' dependents. *Id.* However, because this payment was made through their plan, the *Humphrey* court went on to conduct a good faith analysis using the *Kitchens* factors and found that the debtors proposed their plan in good faith. *Id.*

In this case, the tuition payment (a current expense) is made outside of the plan. Therefore, while this Court follows the minority view for questionable expenses included in the plan, this case requires analysis of an individual expense, in essence following the majority view. If the private school tuition expense is reasonably necessary for the maintenance or support of Debtors or Debtors' dependents, then the expense is not considered disposable income and Debtors' plan may be confirmed if proposed in good faith.

 There is no bright line rule for what constitutes a reasonably necessary expense. *In re Reyes*, 106 B.R. 155, 157 (Bankr.N.D.Ill.1989). A split of authority

exists as to whether payment of school tuition is a reasonably necessary expense for a Chapter 13 debtor. *In re Nicola*, 244 B.R. 795, 797–98 (Bankr.N.D.Ill.2000). Such is determined by looking at the facts of each case on a case by case basis. Some courts find the facts of certain cases support that private school tuition is a reasonably necessary expense. *See In re Nicola*, 244 B.R. at 797–98 (distinguishing various cases and finding expense reasonably necessary); *see also In re Riegodedios*, 146 B.R. 691 (Bankr.E.D.Va.1992); *In re Navarro*, 83 B.R. 348 (Bankr.E.D.Pa. 1988); *In re Gonzales*, 157 B.R. 604 (Bankr.E.D.Mich.1993) (approximately twenty percent payment to unsecured creditors, debtor's college tuition expense deemed discretionary but dependents' college support payment not discretionary). While some courts do not. *See In re Ehret*, 238 B.R. 85 (Bankr.D.N.J.1999); *In re MacDonald*, 222 B.R. 69 (Bankr. E.D.Pa.1998); *Univest–Coppell Village, Ltd. v. Nelson*, 204 B.R. 497 (E.D.Tex. 1996) (tuition expenses for private school not reasonably necessary); *In re Jones*, 55 B.R. 462 (Bankr.D.Minn.1985).

Debtors note that the amount paid for the private education of their two minor children is less than the amount to be distributed to the unsecured creditors. Debtors retain no real property other than their home. Additionally, Debtors note strong religious beliefs carried out by their feeling that their children should receive education in a Christian school and that these children have always attended private Christian school.

These factors support a finding that the private school tuition is a reasonably necessary expense in this case. The Court

(8) special circumstances such as inordinate medical expense;
(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;
(10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors;

(11) the burden which the plan's administration would place on the trustee.
702 F.2d at 888–89. Additionally, in cases such as this, the Court looks to whether expenses were within the potential expectations of creditors when credit was extended.

also finds support in the fact that this tuition expense is an expense that creditors could have reasonably anticipated to be incurred by Debtors at the time credit was extended. Additionally, the Court finds that Debtors propose their plan in good faith and that the totality of the circumstances support confirmation of Debtors' plan. Debtors appear sincere in seeking Chapter 13 relief. Debtors amended their plan to increase payments to unsecured creditors who will receive substantial distribution over the sixty-month plan period. Debtors' primary motivation is to save their home and still be able to provide a good life for their children, unfortunately Dr. Burgos' loss of income coincided with Debtors incurring large debt.

While the Trustee's concerns are well taken, the Trustee is not without future remedy in this case. The Trustee can, and maybe should in this case and all cases, monitor the Debtors' financial activities over the course of the plan and solicit information from Debtors on a regular basis to determine whether additional disposable income exists to increase payment to unsecured creditors.

### *CONCLUSION*

The Court finds Debtors' private school tuition payments are reasonably necessary expenses and that Debtors' plan, as amended, is proposed in good faith. Accordingly, the Court will confirm their plan, as amended. A separate order overruling the Trustee's objection will be entered in accordance with these Findings of Fact and Conclusions of Law.