### In re David C. HELMS and Tonya M. Helms, Debtors.

#### No. 00–5400–3F3.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

May 16, 2001.

Lisa C. Cohen, Gainesville, FL, for Debtors.

Mamie L. Davis, Jacksonville, FL, Standing Chapter 13 Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Case is before the Court for confirmation of the First Amended Chapter 13 Plan ("the First Amended Plan") filed by

David C. Helms and Tonya M. Helms ("Debtors") on December 28, 2000. (Doc. 34.) On January 8, 2001, Mamie L. Davis, the Standing Chapter 13 Trustee ("Trustee"), filed an Objection to Confirmation of Debtors' First Amended Chapter 13 Plan ("the Objection to Confirmation"). (Doc. 36.) The Court held an evidentiary hearing on confirmation on April 3, 2001 and took the matter under advisement. Upon review of the evidence presented and upon review of the arguments and submissions of counsel, the Court finds it appropriate to deny confirmation of Debtors' First Amended Plan.

## FINDINGS OF FACT

On July 17, 2000, Debtors filed a voluntary petition for Chapter 13 bankruptcy protection. (Doc. 1.) Debtors filed their Schedules D, E, and F with the petition.

On August 10, 2000, Debtors filed their Schedules A, B, C, G, H, I and J. (Doc. 14.) According to Debtors' Schedule I, Debtors' monthly income totals $2,595.47. According to Debtors' Schedule J, Debtors' current expenditures total $2,137.00. Therefore, Debtors assert that they earn $ 458.47 in disposable income per month.

Debtors indicate a payroll deduction of $ 159.19 for "401(k) loan" on their Schedule I.

On August 10, 2000, Debtors filed their first proposed Chapter 13 Plan. (Doc. 13.) The Chapter 13 Plan provided that Debtors pay $458.47 per month for thirty-six months to Trustee for distribution to unsecured, nonpriority creditors.

On December 28, 2000, Debtors filed a Motion to Extend Plan Term to Forty-two Months. (Doc. 33.) Debtors desire to extend their Plan to forty-two months in order to cure the arrearages on their home mortgage.

On December 28, 2000, Debtors filed the First Amended Chapter 13 Plan. (Doc. 34.) Under the First Amended Plan Debtors would pay $458.47 per month to Trustee for the first fifteen months of the First Amended Plan, $558.16 per month to Trustee for months sixteen through twenty-three, and $600.45 per month to Trustee for months twenty-four through forty-two.

According to Debtors, under the First Amended Plan their unsecured, nonpriority creditors would be paid ninety-three percent of their claims.

According to Trustee's calculations, Debtors' unsecured, nonpriority creditors would receive a sixty-four percent distribution under the First Amended Plan.

On January 8, 2001, Trustee filed the Objection to Confirmation. (Doc. 36.) Trustee argues that Debtors have not provided for application of all of their disposable income to the First Amended Plan payments. Specifically, Trustee asserts that the $159.19 in payroll deductions to repay Debtors' 401(k) loans should be applied to First Amended Plan payments because the 401(k) loan repayment expenditures are not reasonably necessary for the maintenance or support of Debtors or their dependents.

Debtors counter that the First Amended Plan should be confirmed because unsecured, nonpriority creditors would receive more on their claims under the forty-two month First Amended Plan than under a thirty-six month plan to which the 401(k) loan repayment funds were allocated. "[U]nsecured creditors are actually receiving $977.74 more under the Debtors' First Amended Plan than they would receive under a plan of which the trustee would approve, namely a plan which would be for a term of thirty-six months with no payroll deductions for the 401(k) loans." *See* Debtors' Mem. at 2. (Doc. 43.) In other words, Debtors argue that the additional larger payments made during months thir-

ty-six through forty-two will more than make up for Debtors' failure to apply the 401(k) loan repayment funds to First Amended Plan payments.

## CONCLUSIONS OF LAW

### I. THE DISPOSABLE INCOME REQUIREMENT

#### A. Section 1325(b)

Section 1325(b) of the Bankruptcy Code provides that, upon objection by a trustee or unsecured creditor, a Chapter 13 debtor must either pay one hundred percent of unsecured, nonpriority claims or must apply all of his disposable income to Chapter 13 plan payments. Section 1325(b) provides, in relevant part:

> (b)(1) If the trustee or the holder of an allowed secured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.
>
> (2) For the purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—
>
> (A) for the maintenance or support of the debtor or a dependent of the debtor
>
> . . .

11 U.S.C. § 1325(b) (2001).

#### B. The split of authority on the proper disposable income standard

Courts differ on what standard to employ in determining whether a debtor has devoted all of his disposable income to plan payments. *See In re Burgos,* 248 B.R. 446, 449 (Bankr.M.D.Fla.2000). The majority of courts examine the particular contested expenditure in order to determine whether or not it is reasonably necessary for the maintenance or support of a debtor or of a debtor's dependents. *See id.* (citing *In re Humphrey,* 165 B.R. 508, 510 (Bankr.M.D.Fla.1994)) "Following the majority view, if a debt is determined to be unnecessary for maintenance or support, but is instead itself funded by disposable income, the plan cannot be confirmed because that plan fails to comply with section 1325(b)(1)(B)." *Id.*

The minority of courts allows for confirmation of a proposed Chapter 13 plan as long as the monthly plan payments exceed a debtor's stated monthly disposable income. *See Burgos,* 248 B.R. at 449. "The minority view allows debtors to maintain payment of unnecessary expenses as long as they are funded through the plan and will determine whether the good faith requirements are met if an objection is raised." *Id.* at 450.

This Court has acknowledged the validity of the majority approach in cases where a particular questionable expense is being paid outside a plan. *See Burgos,* 248 B.R. at 450. This Court has also recognized the validity of the minority approach in cases where a particular expense is to be paid through a plan. *See id.*

#### C. Adoption of the majority standard in all disposable income disputes

The Court finds it appropriate at this point to adopt the majority standard for evaluation of all disposable income objections.

The Court finds that the minority approach to the disposable income test ig-

nores the plain language of § 1325(b)(2). Section 1325(b)(2) defines disposable income by defining the particular types of expenses—those necessary for the maintenance and support of a debtor or of a debtor's dependents—that may be deducted from a debtor's income before a debtor's income must be entirely devoted to paying prepetition unsecured creditors. By framing the disposable income inquiry in terms of permissible expenses, Congress logically intended courts to inquire into the necessity of each of a debtor's questionable proposed expenses. Failure to do so contradicts the clear mandate of § 1325(b)(2). The Court in *Humphrey* justified application of the minority approach by stating that the Code does not refer to the types of expenses that may or may not be paid through a plan. *See Humphrey*, 165 B.R. at 510. This statement ignores § 1325(b)(2) completely.

The minority position also provides excessive deference to a debtor by leaving unexamined the necessity of a debtor's proposed expenses when determining whether or not all disposable income has been applied to plan payments. Courts following the minority view simply perform the mathematical exercise of subtracting stated expenses from income and then measuring the difference against proposed plan payments. The minority position allows for confirmation as long as a monthly plan payment exceeds the difference. However, by creating the requirement that all expenses be necessary for maintenance or support and by placing it in the disposable income context, Congress clearly intended for a court to look behind a debtor's statement of proposed expenses and to determine the stated expenses' necessity in disposing of a disposable income objection. The minority courts propose that this inquiry should be undertaken in evaluating a good faith objection rather than in the disposable income context. *See Hum-*

*phrey*, 165 B.R. at 510. "[T]he good faith determination is better suited to assess the propriety of [an expense] than is the disposable income analysis." *Id.* However, such reasoning impermissibly conflates and confuses two distinct Code requirements. Creditors and trustees should not be obliged to lodge dual disposable income and good faith objections in order to bring into question a debtor's application of disposable income alone. Likewise, a debtor should not be permitted to prove satisfaction of the disposable income requirement by presenting evidence that a plan has been proposed in good faith. By supplanting the expense-centered value judgment required by § 1325(b)(2) with the separate good faith standard of 11 U.S.C. § 1325(a)(3), minority courts essentially rewrite the Code, thwarting congressional intent and confusing all parties.

■ Finally, the Court finds it inadvisable to maintain the deficient minority standard in situations where proposed expenses are paid through a plan rather than outside it. The through a plan/outside a plan distinction is legally inoperative. The distinction seems to arise from a misreading of § 1325(b)(1). Courts that apply the minority standard in situations where questionable expenses will be paid through a plan seem to read § 1325(b)(1) as requiring that all disposable income must be paid *through* a plan, rather than the correct reading, requiring that all disposable income must be applied *to* plan payments. If § 1325(b)(1) is properly read as requiring that all disposable income be applied to plan payments, then the through a plan/outside a plan distinction disappears, because plan payments will always be made through a plan.

■ Therefore, in order for the Court to confirm Debtors' First Amended Plan, Debtors must bring forward evidence suf-

ficient to establish that the particular challenged expenditure—the 401(k) loan repayment deduction—is reasonably necessary for their maintenance or support or for the maintenance or support of their dependents.

## II. 401(k) LOAN REPAYMENT: REASONABLY NECESSARY FOR MAINTENANCE OR SUPPORT?

### A. 401(k) loan repayment is per se not a reasonably necessary expense

■ This Court follows the majority view that voluntary 401(k) loan repayment expenditures are per se not necessary for the maintenance or support of a debtor or of a debtor's dependents under the strict disposable income standard.[1] *See In re Padro*, 252 B.R. 809, 812 (Bankr.M.D.Fla. 2000). "[M]onthly deduction for repayment of the loan to Debtor husband's [401(k)] retirement plan is disposable income ... '[t]o hold otherwise would convey a message to debtors contemplating bankruptcy that they may borrow against their retirement funds pre-petition and then insulate the repayment of those monies from their creditors postpetition.' " *Id.* (quoting *In re Jones*, 138 B.R. 536, 539 (Bankr. S.D.Ohio 1991)). The Court in *Padro* further found that the adverse tax consequences resulting from a debtor's failure to repay a 401(k) loan did not justify separately classifying and discriminating in favor of such loans. *See id.*

### B. Application to the instant case

The Court finds that, as a matter of law, Debtors' payroll deduction for 401(k) loan repayment is not reasonably necessary for the maintenance and support of Debtors or their dependents. Therefore, the funds dedicated to 401(k) loan repayment are disposable income not applied to plan payments in violation of § 1325(b)(1)(B).

The Court notes that Debtors do not argue that the 401(k) loan repayment expenditure is actually necessary for maintenance or support. Debtors instead contend that they should be allowed to apply this disposable income to an unnecessary expense rather than to plan payments because the First Amended Plan has been lengthened in order to make up for the funds dedicated to 401(k) loan repayment and because the First Amended Plan provides for a relatively high pro rata distribution to unsecured creditors. Essentially, Debtors argue that they should be allowed to separately classify and discriminate in favor of the 401(k) loan because they have done so in good faith. Debtors assert that

[a]lthough the majority of courts have held that such adverse [tax] consequences are not sufficient to make 401(k) loan repayments a necessary living expense, such tax consequences are a legitimate consideration for debtors and the debtors' attempt to avoid this problem does not evidence bad faith ...

---

1. The Court acknowledges the recent decision of the United States Court of Appeals for the Second Circuit in *New York City Employees' Retirement System v. Sapir (In re Taylor)*, 243 F.3d 124 (2d Cir.2001). In *Taylor*, the court refused to adopt the majority position that 401(k) loan repayment expenses are per se not reasonably necessary; rather, the court found it appropriate to evaluate the necessity of 401(k) loan repayment on a case-by-case basis. *See Taylor*, 243 F.3d at 129. The Court finds the *Taylor* court's logic unpersuasive because it cannot imagine any situation wherein voluntary 401(k) loan repayment could possibly be necessary for maintenance or support. It is conceivable that failure to repay a 401(k) loan might injure a debtor financially; however, avoidance of purely economic injury such as tax penalties does not rise to the level of necessity for maintenance or support. *See Padro*, 252 B.R. at 812.

Debtors' voluntary extension of their plan to forty-two months, resulting in a payment to unsecureds in excess of what would have been paid in a thirty-six month plan without such deductions, demonstrates their good faith.

Debtors' Mem. at 4. However, the Code does not make this demonstration of good faith relevant to the disposable income inquiry.

■ The Court will not confirm a plan that does not apply all disposable income as it is unambiguously defined in § 1325(b)(2)—income left over after payment of only those expenses reasonably necessary for support—simply because that plan fails to comply with § 1325(b)(2) in good faith. Section 1325(b) clearly states that, unless a plan provides for a one hundred percent payout, all disposable income must be applied to plan payments. Section 1325(b)(2) then defines disposable income as income not allocated to reasonably necessary expenditures. There is no "good faith" corollary to this definition.

One may wonder why Trustee objected to a plan that provides for such a relatively sizeable distribution. The answer, of course, is that Trustee properly objected because the First Amended Plan, although relatively generous, does not comply with all of the requirements of § 1325. The Court will deny confirmation for the same reason. The First Amended Plan does not provide for a one hundred percent distribution to unsecureds as required by § 1325(b)(1)(A), nor does it provide for all of Debtors' disposable income to be applied to plan payments as required by § 1325(b)(1)(B).

### CONCLUSION

The Court finds that under the First Amended Plan Debtors fail to apply all of their disposable income to plan payments as required by § 1325(b)(1)(B). There-fore, the Court will deny confirmation of the First Amended Plan.

The Court will enter a separate Order in accordance with these Findings of Fact and Conclusions of Law.