In re Michael WATSON, Kathleen M. Watson, Debtors.

No. 03–10179.

United States Bankruptcy Court, D. Rhode Island.

Sept. 15, 2003.

Christopher M. Lefebvre, Pawtucket, RI, for Debtors.

John Boyajian, Boyajian, Harrington & Richardson, Providence, RI, Chapter 13 Trustee.

### ORDER DENYING CONFIRMATION

ARTHUR N. VOTOLATO, Bankruptcy Judge.

The Trustee objects to confirmation of the Debtors' Chapter 13 Plan on the ground that the Debtors are not contributing all of their disposable income, as required under 11 U.S.C. § 1325(b)(1)(B). Specifically, the Trustee questions a claimed expense of $750 per month for parochial school tuition for the Debtors' two minor children, setting the stage for a determination as to whether such expenses may be classified as charitable donations. After an evidentiary hearing on March 25, 2003, the Court took the matter under advisement and requested written submissions from the parties. Further oral argument was heard on June 26, 2003, and the matter is now ripe for disposition. After reviewing the evidence and arguments presented, and for the reasons discussed below, I find: (1) that the claimed expense is not reasonably necessary; and (2) conclude that the Religious Liberty and Charitable Donation Protection Act of 1998 does not apply in this case.

### FACTS

On January 17, 2003, Michael and Kathleen Watson filed a joint Chapter 13 case, and in their Schedules I and J show net monthly income of $5,770, expenses of $4,194, and $1,576 in disposable income. The plan provides for thirty-six monthly payments of $1,576 (Total $56,736), which will pay $123,714 of unsecured creditors twenty-five percent of their claims.

The Debtors are devout Catholics, the children have always attended parochial school, and the tuition is less than fifteen percent (15%) of their gross annual income. The Debtors contend that the education expense qualifies as a charitable contribution under the Religious Liberty and Charitable Donation Act (the Act) and 11 U.S.C. §§ 548(d)(3), 1325(b)(1), (b)(2)(A). The Trustee counters that parochial school tuition does not per se qualify as a charitable donation under the Act.

He also argues that the Debtors failed to establish that the tuition payment is a reasonable and necessary expense, and that if the $750 in question were added to

the plan the distribution to creditors would more than double to 62% over three years.

### DISCUSSION

■ To qualify for confirmation, the Chapter 13 plan must provide "that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan." 11 U.S.C. § 1325(b)(1)(B). "Disposable income" is defined as:

> income which is received by the debtor and which is not reasonably necessary to be expended—
>
> > (A) for the maintenance or support of the debtor or a dependent of the debtor, including charitable contributions...

11 U.S.C. § 1325(b)(2)(A).

Regarding the *reasonably necessary* issue, it has been held that "in the absence of some compelling circumstance... a private school education is not reasonably necessary." *In re Webb,* 262 B.R. 685 (Bankr.E.D.Tex.2001); *see, e.g., Univest–Coppell Village, Ltd. v. Nelson,* 204 B.R. 497 (E.D.Tex.1996) (rejecting monthly tuition payments for private high school where debtors had no particular problem with the quality of education in the local public school); *In re Jones,* 55 B.R. 462, 467 (Bankr.D.Minn.1985).

In *Webb,* the Court held that a private school education was a reasonably necessary expense where the debtor's son had been diagnosed to have Attention Deficit Hyperactive Disorder, as well as a moderate to severe Generalized Anxiety Disorder. 262 B.R. at 690. The debtor had tried to assimilate his son into the public school, but was unsuccessful due to the lack of a "therapeutic educational environment" that *was* provided by the private school. *Id.* at 690–91.

In *In re Grawey,* the Court held that it was a reasonably necessary expense for the Debtor to pay $277 per month to send her two children to a parochial high school, where she chose to "sacrifice... other basic necessities such as healthcare insurance" in order to have the ability to pay private school tuition. 2001 WL 34076376 (Bankr.C.D.Ill. Oct. 11, 2001). Similarly, in *In re Burgos,* the Court found that debtors who offered more money to unsecured creditors than the total of tuition payments, and proposed a sixty month plan and a seventy percent distribution to unsecured creditors, to "save their home and... provide a good life for their children," should have such a plan confirmed. *In re Burgos,* 248 B.R. 446, 450–51 (Bankr. M.D.Fla.2000). These are all sound results with which I totally agree.

The Debtors here, however, propose none of the indicia of good faith shown by the debtors in *Grawey* and *Burgos.* To the contrary, they have claimed many borderline and/or excessive expenses, and are unwilling to extend their plan beyond three years. Compared to the debtor in *Grawey* who gave up healthcare insurance coverage, and the debtor in *Burgos* who proposed a five year plan, finding that school tuition is not a reasonably necessary expense in this case is an easy call. These Debtors have given no reason why their children need to attend parochial school, i.e., they have not shown that the public schools in their area (East Providence) are not adequate, and neither have they suggested any other special need to do so. The only reason advanced by them is preferential, i.e., their children have always attended parochial school because of the family's strong religious ties. This argument addresses none of the compelling circumstances typically cited for finding private school tuition a reasonably necessary expense, and mere preference does

not bring it within the meaning of the Act. Allowing these Debtors to pay parochial school tuition which over the life of the Plan will exceed the amount distributed to creditors, is to require general creditors to fund the private education of the Debtors' kids.

■ The Debtors also argue that parochial school tuition payments should be considered "charitable contributions" under 11 U.S.C. § 1325(b)(2)(A), citing *In re Kirschner*, 259 B.R. 416 (Bankr.M.D.Fla. 2001). What the *Kirschner* court really said was that "Congress intended for the [Act] . . . to 'protect the rights of debtors *to continue to make religious and charitable contributions* after they file for bankruptcy relief.'" *Id.* at 422, *citing* H.R. REP. No. 05–556 (105th Cong.) (emphasis added). If Congress intended parochial school tuition to be included within the scope of the Act, it could, should, and would have said so, and in *Kirschner* the Court specifically pointed out that "Congress has yet to . . . protect tuition expenses for religious private schools," as it has protected "charitable contributions" under 11 U.S.C. § 1325(b)(2)(A). 259 B.R. at 423. *Kirschner* deals with religious tithing, not parochial school tuition payments, and stands for the narrow proposition that a bankruptcy court need not determine whether a "charitable contribution" that is less than 15% of the debtor's gross income is a reasonable and necessary expense under 11 U.S.C. § 1325(b)(2)(A). Under the statute, such contributions are de facto reasonable and necessary and not subject to scrutiny by the Court. Under no stretch of imagination does *Kirschner* extend to or cover the facts in this case.

Charitable or religious donations are just that, and in making such contributions[1] the donor is not bargaining for a tangible quid pro quo, but is making a gift to support the religion of his/her choice. Here the Debtors propose to purchase, under the guise of a so-called religious donation, a substantial asset—the private education of their children. Based upon the record and the applicable law, I conclude as a matter of law that parochial school tuition payments are not "charitable donations" within the meaning of the Act, and that the money proposed to be used by the Debtors to make said payments is disposable income required to be distributed under the Chapter 13 Plan.

---

1. Contribution is defined as "the act of contributing" and "contribute" is defined as "to give or provide jointly with others; give to a common fund." Webster's New World Dictionary, 303 (3d ed.1988). Additionally, "charitable contribution" is a defined term under the Act and it adopts the definition used in the Internal Revenue Code, 26 U.S.C. § 170(c) which states in part:

   "charitable contribution" means a contribution or gift to or for the use of—
   (2) A corporation, trust, or community chest, fund, or foundation—
   (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States;
   (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals;
   (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and
   (D) which is not disqualified for tax exemption under section 501(c)(3) by reason of attempting to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.
   26 U.S.C. § 170(c).

Accordingly, confirmation is DENIED. Pursuant to Rhode Island Local Bankruptcy Rule 3015–3(e), the Debtors have eleven (11) days within which to submit an amended plan.