**In re Anthony Grant LYNCH and Elizabeth Shytle Lynch, Debtors.**

**Anthony Grant Lynch and Elizabeth Shytle Lynch, Appellants,**

v.

**Steven G. Tate, Trustee, Appellee.**

**Civ. No. 1:03CV131.**

United States District Court,
W.D. North Carolina,
Asheville Division.

Oct. 14, 2003.

Bentley Leonard, Asheville, NC, for debtors.

Steven G. Tate, Statesville, NC, pro se Chapter 13 Trustee.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Appellants' appeal from the decision of Chief U.S. Bankruptcy Court Judge George R. Hodges sustaining an objection to confirmation of the Appellants' Chapter 13 Plan of Reorganization under the Bankruptcy Code.

### I. STANDARD OF REVIEW

■ The decision of a bankruptcy court is reviewed by a two-step process. Reversal of the findings of fact of the bankruptcy court may occur only where the findings are clearly erroneous. *In re Deutchman,* 192 F.3d 457, 459 (4th Cir. 1999). The conclusions of law of the bankruptcy court are reviewed *de novo. Id.* Findings of fact are clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been commit-

ted". *In re Green,* 934 F.2d 568, 570 (4th Cir.1991) (citing *In re First Federal Corp.,* 42 B.R. 682, 683 (W.D.Va.1984)). As stated by the Supreme Court:

> If the [lower court's] account of the evidence is plausible in light of the record viewed in its entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (citations omitted).

■ In addition, due regard must be given to the opportunity of the bankruptcy court to judge the credibility of witnesses. *In re Tudor Assocs., Ltd., II,* 20 F.3d 115, 119 (4th Cir.1994); Fed. R. Bankr. 8013.

### II. PROCEDURAL HISTORY

Appellants filed for Chapter 13 relief on February 1, 2003. Appellants' Opening Brief, filed August 21, 2003, at 6. They proposed a plan of reorganization which would pay 20 percent of the claims of their unsecured creditors by making payments of $450 per month. Order Sustaining Objection to Confirmation, filed May 15, 2003, *attached to* Notice of Appeal, at 1. The Appellants included in their budget a monthly expenditure for "school tuition and after school care (religious school)" in the amount of $567 per month. Brief, *supra.* The Chapter 13 Trustee advised the Appellants that unless they could make a higher Plan payment each month, he would object to the budgeted amount of $567 for the private school tuition based on disposable income. *Id.* Because the Appellants did not believe they could meet any higher payment under the Plan, the Trus-

tee objected and the Bankruptcy Court sustained the objection. *Id.,* at 6–7.

The Bankruptcy Court found that the Bankruptcy Code requires debtors to devote all disposable income to the payment of creditors in a Chapter 13 reorganization. Order, *supra.* Judge Hodges also noted that the definition of disposable income included any income which was not reasonably necessary for the maintenance and support of the debtor and his or her dependants. *Id.,* at 2. The Bankruptcy Court held:

> Application of [the relevant legal] factors to this case requires the finding that the proposed expense [for private school tuition] is not reasonably necessary. The debtors' Plan proposes to pay only 20% of their unsecured debts—the bare minimum that this court will confirm under any circumstances. The amount of the budgeted expense for private school tuition is *greater* than the amount proposed to be paid to all unsecured creditors. There are no special needs for private education here—notwithstanding the debtors' strongly held beliefs—and there has been no demonstration that the debtors' desires can be accomplished in no other manner. Finally, the rest of the debtors' budget is far from Spartan, and is as the Trustee observed "generous" to the debtors.

*Id.,* at 2–3. The Appellants have appealed this ruling on both substantive and procedural grounds.

## III. STATEMENT OF FACTS FROM THE RECORD ON APPEAL

Included in the Appellants' designation of record is a copy of their petition in bankruptcy which discloses they own two parcels of real estate having a combined value of $164,500. Voluntary Petition, *attached to* Designation of Record on Appeal, filed August 6, 2003. The total

amount owed unsecured creditors holding nonpriority claims is $33,768. *Id.* The total combined net monthly income of the Appellants, who are married, is $4,608.69. *Id.* Their total monthly expenses, including the private school tuition, is $4,154.77, which leaves the amount of $450 which they propose to pay to the unsecured creditors. *Id.* It is the monthly sum of $567 for the private school tuition for the Appellants' two children to which the Trustee filed an objection.

Because Judge Hodges did not take any testimony from witnesses during the hearing on the Trustee's objection, Appellant Elizabeth Lynch wrote to him to explain why private school is essential for her children. Letter, dated April 25, 2003, *attached to* Designation, *supra.* She noted that her 12–year–old son is academically advanced by comparison to students at a local state funded charter school and a private school. *Id.* Her 4–year–old daughter is in kindergarten at a private school and is reading, writing and doing simple math. *Id.* "The public schools in our area are only teaching the alphabet in the 5 year-old kindergarten classes" and her daughter has already progressed beyond that skill. *Id.*

> Both my children are used to strict Christian discipline and are well adjusted, well behaved young people. Both of these schools reinforce mine (sic) and my husband's strong Christian beliefs, value system and discipline. These schools have our children nine hours a day sometimes. This is longer than we have with them at home on some days. I consider it crucial that they be exposed to an environment that is conducive to our Christian beliefs during their time at school. Both schools have conscientious, Christian teachers who are committed to being good Christ-like examples to my children throughout the school day.

This is more precious to me than anything. Removing my children from these wonderful learning environments would be to the detriment of my children. In addition, both schools have small class sizes and both schools do not teach evolution as fact, but as theory.

.    .    .    .    .

Please consider my children's welfare and don't punish them by taking away their right and privilege of a Christian education. I believe our founding Fathers intended for all of our Nation's children to receive a superior Christian education and it is a shame that mine can't get it in our public schools.

*Id.* The transcript from the hearing does not indicate that Judge Hodges refused to allow testimony from witnesses but, instead, that Appellant Elizabeth Lynch, who desired to testify, did not arrive until the conclusion of the hearing. Transcript of Hearing of April 25, 2003, *attached to* Designation, *supra*, at 3. At that point, Judge Hodges declined to hear testimony since counsel for the Appellants had already advised the Court of the information to which she would have testified. In addition, the letter quoted above was made part of the record and obviously was considered by the Court.

## IV. DISCUSSION

■ Title 11 U.S.C. § 1325(b) provides in pertinent part:

(1) If the trustee ... objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—... [it] provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payment under the plan[.]

(2) "[D]isposable income" means income which is received by the debtor and which is not reasonably necessary to be expended [ ] for the maintenance or support of the debtor or a dependent of the debtor . . . .

At issue, then, is whether tuition for private schools falls within the definition of disposable income.

■ "Debtors have the ultimate burden of persuasion to prove that their projected expenditures are reasonably necessary for the maintenance and support of themselves or their dependents." *In re Webb*, 262 B.R. 685, 688 (Bankr.E.D.Tex.2001). "There is no bright line rule for what constitutes a reasonably necessary expense. A split of authority exists as to whether payment of school tuition is a reasonably necessary expense for a Chapter 13 debtor." *In re Burgos*, 248 B.R. 446, 450 (Bankr.M.D.Fla.2000) (citations omitted). The matter does appear, however, to be resolved on a case-by-case basis, heavily dependant on the facts. *Id.*

The primary reason given by the Appellants for the necessity of private school tuition is one of religious conviction, including their objection to the teaching of evolution. *In re MacDonald*, 222 B.R. 69, 72 (Bankr.E.D.Pa.1998) ("I'm Catholic and I want him to go to a Catholic school[ ]" was an insufficient reason to be reasonably necessary.). Appellants have not argued that the public schools in their area are unsafe, remote from their home or educationally unsound. *In re Watson*, 299 B.R. 56, 58–59 (Bankr.D.R.I.2003) (Debtors did not show the public schools in their area were inadequate; the only reason advanced was the family's strong religious beliefs); *In re Weiss*, 251 B.R. 453, 462 (Bankr.E.D.Pa.2000). They merely allege that the public school education is not as advanced and academically challenging as the private school education currently be-

ing received by the children. *Watson, supra* ("[M]ere preference" for devout Catholics to keep their children in the parochial school which they had always attended insufficient); *MacDonald, supra; Univest–Coppell Village, Ltd. v. Nelson,* 204 B.R. 497, 498 (E.D.Tex.1996) (Debtor claimed that honors courses were offered at private school but not public school and her daughter was psychologically better off in private school; court held expense not reasonably necessary). In fact, although there may be less expensive private schools in the area, the Appellants have ruled them out for the same reason. *Id.* Nor have the Appellants offered to modify other aspects of their standard of living in order to accommodate the tuition costs, despite claiming that this education is extremely important to them. *In re Grawey,* 2001 WL 34076376 (Bankr. C.D.Ill.2001) (Mother sacrificed other basic necessities in order to send children to parochial high school.). Neither child suffers from a disability or mental or emotional impairment; indeed, their mother describes them as well adjusted and well behaved. *Webb,* 262 B.R. at 690 (Father had attempted to mainstream son suffering from attention deficit disorder and depression into public school with no success. Moreover, parents transferred their daughter into public school and sold cars which could be perceived as a luxury); *In re Ehret,* 238 B.R. 85, 87–88 (Bankr.D.N.J. 1999). And, the Appellants have not offered to expand the time frame of their reorganization in order to increase the mere 20 percent being paid to unsecured creditors. *Burgos,* 248 B.R. at 451 ("Debtors [who retained no real estate] amended their plan to increase payments to unsecured creditors who will receive substantial distribution [70 percent] over the sixty-month plan period."); *Grawey, supra; In re Riegodedios,* 146 B.R. 691 (Bankr. E.D.Va.1992) (Where debtors were paying 41 percent to unsecured creditors, paying $614 per month for the last year of daughter's tuition at state college reasonably necessary.). Finally, this is not a case in which the tuition for the school is a "bargain." *In re Bottelberghe,* 253 B.R. 256 (Bankr.D.Minn.2000) ($246 per month for parochial school for 4 children reasonably necessary.).

Under the facts of this case and the legal precedent, the undersigned cannot find that the Bankruptcy Court has committed error.

## V. ORDER

**IT IS, THEREFORE, ORDERED** that the decision of the United States Bankruptcy Court is hereby **AFFIRMED**.