# United States Court of Appeals
## For the First Circuit

No. 04-9005

IN RE MICHAEL WATSON and KATHLEEN WATSON,

Debtors,

MICHAEL WATSON and KATHLEEN WATSON,

Appellants,

v.

JOHN BOYAJIAN, Chapter 13 Trustee,

Appellee.

APPEAL FROM THE BANKRUPTCY APPELLATE PANEL

OF THE FIRST CIRCUIT

Before

Torruella, Circuit Judge,

Campbell, Senior Circuit Judge,

and Lynch, Circuit Judge.

Christopher M. Lefebvre, with whom George M. Prescott Jr., was on brief, for appellants.
John P. Boyajian, with whom Boyajian, Harrington & Richardson was on brief, for appellee.

March 25, 2005

**CAMPBELL, <u>Senior Circuit Judge</u>.** Debtors-Appellants Michael and Kathleen Watson (the "Watsons") appeal from an order of the bankruptcy court denying confirmation of their proposed Chapter 13 plan. The bankruptcy court denied confirmation on the ground the Watsons failed to establish that all projected "disposable income" received during the plan period would be applied to make payments under the plan. <u>See</u> 11 U.S.C. § 1325(b)(1)(B). In particular, the bankruptcy court determined that the cost of sending the Watsons' two minor children to parochial school was neither a "reasonably necessary" expense nor a "charitable contribution" -- each of which is excluded from the definition of "disposable income" under 11 U.S.C. § 1325(b)(2)(A). <u>See</u> <u>In re</u> <u>Watson</u>, 299 B.R. 56, 58-60 (Bankr. D.R.I. 2003). The bankruptcy appellate panel affirmed. <u>In re Watson</u>, 309 B.R. 652, 657 (B.A.P. 1st Cir. 2004). This appeal followed.

Although they did not make the same argument in the bankruptcy court, the Watsons argue in this appeal that to deny confirmation of the plan because of its provision for paying the cost of sending the children to parochial school burdens the protected exercise of their Catholic faith, in contradiction of the Religious Freedom Restoration Act, as amended. <u>See</u> 42 U.S.C. § 2000bb-1 <u>et seq.</u> They also argue that the bankruptcy court erred

-2-

in finding that the parochial school tuition payments were not reasonably necessary.[1]  For reasons that follow, we affirm.

## I.  Background

On January 17, 2003, the Watsons filed a joint case under Chapter 13 of the United States Bankruptcy Code.  See 11 U.S.C. § 1301 et seq.  Their Schedules I and J showed net monthly income of $5,770, expenses of $4,194, and disposable income of $1,576.  Their proposed Chapter 13 plan provided for thirty-six monthly payments of $1,576 (total $56,736), which would have paid to unsecured creditors twenty-five percent of their claims.

The Chapter 13 trustee, John Boyajian ("Trustee"), objected to confirmation of the plan on the ground that the Watsons were not contributing all of their disposable income as required under 11 U.S.C. § 1325(b)(1)(B).[2]  "Disposable income" is defined as:  "income which is received by the debtor and which is not reasonably necessary to be expended--(A) for the maintenance or

---

[1]The Watsons do not contend on appeal that the bankruptcy court erred in rejecting their argument that the parochial school tuition payments were charitable contributions within the definition of 11 U.S.C. § 1325(b)(2)(A).  We do not, therefore, address this issue.

[2]11 U.S.C. § 1325(b)(1)(B) provides:

> If the trustee . . . objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

support of the debtor or a dependent of the debtor, including charitable contributions." 11 U.S.C. § 1325(b)(2)(A). The Trustee objected in particular to a claimed expense of $735 per month for parochial school tuition for the Watsons' two minor children. The Watsons, who are Catholics, maintained that the expense is reasonably necessary under the circumstances. The Watsons also argued in the alternative that the expense is a "charitable contribution," hence a reasonably necessary expense under the amended definition of "disposable income" provided by the Religious Liberty and Charitable Donation Act of 1998. See supra note 1.

At a hearing before the bankruptcy court, Mr. Watson testified that he, his wife, and their two children are devout Catholics who attend church every Sunday and during all the holy days of obligation. Mr. Watson testified that he is actively involved in church ministry, and that his children have been assisting at mass since the third grade. Mr. Watson stated that he and his wife have always sent their children to parochial schools because they value the importance such schools place on God.

After further briefing and oral argument, the bankruptcy court, on September 15, 2003, issued an order denying confirmation of the plan, finding (1) that the tuition expense is not reasonably necessary, and (2) that the tuition is not a charitable contribution excluded under the Religious Liberty and Charitable Donation Protection Act of 1998. In re Watson, 299 B.R. at 57.

-4-

The bankruptcy court found that the Watsons had "claimed many borderline and/or excessive expenses," that they were "unwilling to extend their plan beyond three years," and that their plan therefore failed to demonstrate good faith. Id. at 58. The order denying confirmation of the plan provided that, in accordance with the local bankruptcy rules, the Watsons had eleven days within which to file an amended plan. Id. at 60.

On September 24, 2003, the Watsons appealed from the order to the bankruptcy appellate panel ("BAP"). Thereafter, the Watsons filed in the bankruptcy court a motion to stay pending appeal. On October 27, 2003, the bankruptcy court entered an order denying the stay motion and dismissing the case. The order stated as follows:

1. The Motion for a Stay is denied and the case dismissed.
2. For administrative purposes, the underlying case shall remain open and the deadline contained in Rhode Island Local Bankruptcy Rule 3015-3(e) extended generally until 10 days after the entry of a decision on the merits of Debtors' appeal by the Bankruptcy Appellate Panel.
3. This order may be modified by any party in interest upon the filing of an appropriate motion.

On May 21, 2004, the BAP issued its judgment affirming the bankruptcy court's denial of confirmation. In re Watson, 309 B.R. at 664. The BAP concluded that the bankruptcy court's order denying confirmation of the plan was interlocutory and not final because the Watsons were "free to propose an alternate plan." Id. at 659. The BAP made no mention of the bankruptcy court's

subsequent order denying the motion to stay pending appeal and dismissing the case. See id. ("Here, the Bankruptcy Court did not dismiss the case . . . ."). In spite of its determination that the bankruptcy court's 9/15/03 order was interlocutory, the BAP exercised jurisdiction to hear the appeal under 28 U.S.C. § 158(a)(3), providing for review of interlocutory orders, and affirmed. Id. at 657, 659. On June 15, 2004, the Watsons appealed to this Court.

## II.  Jurisdiction

We have requested the parties to brief the question "whether the finality of the [bankruptcy court's] 10/27/03 order dismissing the case is undercut by the order's provision that the case 'shall remain open' and that the deadline for filing a modified Plan shall be extended."  Both parties to this appeal contend that this Court has jurisdiction pursuant to 28 U.S.C. § 158(d) to hear this appeal.  We agree.

Under 28 U.S.C. § 158(d), this Court has "jurisdiction of appeals from all final decisions, judgments, orders, and decrees." Although the BAP concluded that it had jurisdiction to review the 10/27/03 order even if interlocutory, this Court has jurisdiction only if the underlying bankruptcy court order is in fact final. See In re Flor, 79 F.3d 281, 283 (2d Cir. 1996) ("For purposes of § 158(d), a determination of the district court is not 'final' unless the underlying order of the bankruptcy court is final.");

-6-

see also In re Lievsay, 118 F.3d 661, 662 (9th Cir. 1997) ("If the underlying bankruptcy court decision is interlocutory, the BAP order affirming or reversing it is also interlocutory.").

The parties concede the bankruptcy court's 9/15/03 order denying confirmation of the plan was not final at the time it was issued "because the Debtors remained free to propose an alternate plan." In re Bentley, 266 B.R. 229, 233 (B.A.P. 1st Cir. 2001); see Bartee v. Tara Colony Homeowners Ass'n (In re Bartee), 212 F.3d 277, 283 (5th Cir. 2000) (stating, "If the order was not intended to be final--for example, if the order addressed an issue that left the debtor able to file an amended plan . . . appellate jurisdiction would be lacking."). But even if the 9/15/03 order denying confirmation of the plan was not final at the time it was issued, the parties assert that the order became final after October 27, 2003, when the bankruptcy court entered its order dismissing the case. See In re Bentley, 266 B.R. at 234 (holding that order denying confirmation of plan "became final when, upon being notified that the Debtors did not intend to seek confirmation of an alternate plan, the court dismissed their case").

In In re Parque Forestal, Inc., this Court held that a district court's appellate order was final and appealable, even assuming the underlying bankruptcy court order was not final at the time it was appealed, because the bankruptcy case had been

dismissed before appeal to this Court, "making the orders below, in effect, final." 949 F.2d 504, 508 (1st Cir. 1991).

> [E]ven assuming, for purposes of argument, that the [bankruptcy court] order then lacked finality, the subsequent dismissal of the bankruptcy proceeding makes this assumption largely irrelevant. The Supreme Court has held that "the requirement of finality is to be given a 'practical rather than a technical construction.'" . . . Whether or not the bankruptcy court's order was final at the time it was appealed to the district court, there is no possibility now that either court's order will be changed or become moot, or that "piecemeal appeals" will waste the time of this court or the parties.

Id. (citations omitted). See also Welch v. Cadre Capital, 923 F.2d 989, 992 (2d Cir. 1991) (holding that there was appellate jurisdiction under principle that "a premature notice of appeal from a nonfinal order may ripen into a valid notice of appeal if a final judgment has been entered by the time the appeal is heard and the appellee suffers no prejudice"), vacated on other grounds, 501 U.S. 1247 (1991); cf. Clausen v. Sea-3, Inc., 21 F.3d 1181, 1184 (1st Cir. 1994) (holding that "by virtue of Fed. R. App. P. 4(a)(2), [appellant's] premature notice of appeal ripened when the district court certified its December 31, 1992, amended judgment pursuant to Fed. R. Civ. P. 54(b)").

Here, regardless whether the bankruptcy court's September 15, 2003 order denying confirmation of the plan was final when issued, it became final in light of the bankruptcy court's October 27, 2003 order dismissing the case and the Watsons' subsequent

failure to file an amended plan within the limited time allowed in that order.

To be sure, the 10/27/03 order, while dismissing the case, also stated that, "[f]or administrative purposes," the case "shall remain open" and that the deadline contained in Rhode Island Local Bankruptcy Rule 3015-3(e) would be extended until ten days after the entry of the BAP's decision in the case. Local Rule 3015-3(e) provides:

> **Confirmation of Plan Denied.** If confirmation is denied, the Court may enter an order dismissing the Chapter 13 case, unless, within eleven (11) days after entry of the order denying confirmation:
> (1) the debtor files a modified plan;
> (2) the debtor moves to convert the case to one under another chapter of the Code;
> (3) the debtor files a motion for reconsideration;
> (4) the debtor appeals the order denying confirmation; or
> (5) the Court otherwise orders.

It is evident from the docket entry for the hearing on the motion for stay that the 10/27/03 order was intended to leave the Watsons free for ten days after the BAP's decision to file an amended plan if the BAP affirmed the bankruptcy court's denial of confirmation. The entry states: "Trustee suggested extending the time to file an amended plan until 10 days after a decision on the case by the BAP. Parties consent to this and will submit an order." The Watsons, however, never filed an amended plan within the ten-day grace period following the BAP's judgment which was issued on May 21, 2004. Instead, on June 15, 2004, 25 days later, they filed a timely appeal to this Court. Their appeal had the effect of

-9-

transferring jurisdiction here from the bankruptcy court. See Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance--it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."). By this point, the window in the 10/27/03 order was closed, and, for all practical purposes, the 9/15/03 order was final.

"[T]he requirement of finality is to be given a 'practical rather than a technical construction.'" Gillespie v. United States Steel Corp., 379 U.S. 148, 152 (1964) (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949)). This case, while not wholly identical, is conceptually similar to Parque. The bankruptcy court's 10/27/03 order dismissing the case left it open only "[f]or administrative purposes" designed to permit the filing of an amended plan within ten days after the BAP's decision came down. After that period had expired, the only remaining limitation upon total dismissal was the taking of an appeal to our court, an event which in no way compromised the finality of the bankruptcy court's own order. Dismissal and closure of a case are distinct events, and there is no reason why a case cannot be dismissed but kept open for limited administrative purposes. See Armel Laminates, Inc. v. Lomas & Nettleton Co. (In re Income Prop. Builders, Inc.), 699 F.2d 963, 965 (9th Cir. 1982).

-10-

We are satisfied that in the circumstances the appealed bankruptcy court's order denying confirmation of the plan was rendered final by the later order and occurrences. We have jurisdiction over this appeal.[3]

## III.  Discussion

### A.  Religious Freedom Restoration Act

The Watsons argue on appeal that the bankruptcy court's order denying confirmation of the plan substantially burdens the protected exercise of their Catholic faith in violation of the Religious Freedom Restoration Act ("RFRA"), as amended by the Protection of Religious Exercise in Land Use and Institutionalized Persons ("RLUIPA").  See 42 U.S.C. §§ 2000bb-1, 2000cc-2000cc-5. This argument, however, was never made to, nor considered by, the bankruptcy court.  It is true the Watsons alluded briefly to the RFRA in briefs submitted to the bankruptcy court and in vague references in their second oral argument in that court.  In each instance, however, the Watsons only raised the RFRA in relation to the argument that parochial school tuition payments constituted charitable contributions -- an issue decided against them below and not now appealed to this Court.  See supra note 1.  The bankruptcy court did not mention the RFRA in its opinion.  In a brief later

---

[3]To avoid future questions, we suggest that such seemingly open-ended orders add a proviso to the effect that if the debtor does not timely take the actions in Local Rule 3015-3(e)(1), (2) or (3), or does not take an action under (4), then the order is final as entered.

-11-

submitted on appeal to the BAP, the Watsons discussed the RFRA, referenced the RLUIPA by citation, and admitted that the RFRA issue had not been "fully briefed below." In affirming the order denying confirmation of the plan, the BAP held that the RFRA does not afford the Watsons the right to use disposable income for parochial school tuition. In re Watson, 309 B.R. at 663.

A party's failure to raise an issue in the bankruptcy court forfeits its right to raise that issue for the first time on appeal in this Court. Evergreen Credit Union v. Woodman (In re Woodman), 379 F.3d 1, 2 (1st Cir. 2004); Gannett v. Carp (In re Carp), 340 F.3d 15, 25-26 (1st Cir. 2003). The Watsons' brief references below to the RFRA, made in context of their charitable contributions argument, were not tantamount to the RFRA and RLUIPA arguments now advanced on appeal. Cf. McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991) (refusing to address issue where plaintiff, in the district court, "made passing mention of the general point - a mention which, in its entirety, comprised two sentences and one citation (to a tangentially relevant case)"). The rule that a party may not raise an argument for the first time on appeal is elemental. In re Carp, 340 F.3d at 26. While we have discretion in exceptional circumstances to address an issue not raised below, no exceptional circumstances exist here. See Sheridan v. Michels (In re Sheridan), 362 F.3d 96, 105 (1st Cir.

2004) (noting our discretion in "rare instances" to review an issue not raised below).

We recognize the BAP saw fit to address the Watsons' RFRA contention.  But the BAP's action does not cure the matter from our perspective.  See In re Woodman, 379 F.3d at 3 n.1.  The effective administration of our judicial system requires that ordinarily each and every non-jurisdictional issue to be determined be initially presented to the nisi prius tribunal.  That a separate court in the appellate chain, for its own reasons, chose to overlook the breach of this rule does not bind our court.  As the Watsons have forfeited the RFRA argument, we do not now consider it.

## B.  Reasonably Necessary Expenses

The Watsons contend that the bankruptcy court erred in determining that parochial school tuition payments for their two minor children are not reasonably necessary expenses within the provisions of 11 U.S.C. § 1325(b).  To qualify for confirmation, the Chapter 13 plan must provide "that all of the debtor's disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payment under the plan."  11 U.S.C. § 1325(b)(1)(B).  "Disposable income" is defined as:

> income which is received by the debtor and which is not reasonably necessary to be expended--
> (A) for the maintenance or support of the debtor or a dependent of the debtor, including charitable contributions . . .

-13-

11 U.S.C. § 1325(b)(2)(A). At issue here is whether the portion of the Watsons' income devoted to pay parochial school tuition for their two minor children is income "reasonably necessary" to be expended for this purpose. In reviewing the bankruptcy court's determination of this matter, we review for "clear error unless the bankruptcy court's analysis was based on a mistaken view of the legal principles involved." In re Carp, 340 F.3d at 22. Here, the bankruptcy court's view of the guiding legal principles was not mistaken and the court did not commit clear factual error.

We begin with the self-evident proposition that it is the debtor who bears the burden of proving that an expense is reasonably necessary. See, e.g., Lynch v. Tate (In re Lynch), 299 B.R. 776, 779 (W.D.N.C. 2003); In re Webb, 262 B.R. 685, 688 (Bankr. E.D. Tex. 2001). Here, the bankruptcy court concluded that the debtors "have not shown that the public schools in their area . . . are not adequate, and neither have they suggested any other special need [to attend parochial school]." In re Watson, 299 B.R. at 58. The court went on to allude to the general proposition advanced in Webb and by other bankruptcy courts that "[i]n the absence of some compelling circumstance . . . a private school education is not reasonably necessary." In re Webb, 262 B.R. at 690; see, e.g., In re Jones, 55 B.R. 462, 467 (Bankr. D. Minn. 1985) ("An expensive private school education is not a basic need of the Debtor's dependents . . . ."). The court then went on to

distinguish the present case from other bankruptcy cases where compelling circumstances for a private education have been found to exist. See In re Watson, 299 B.R. at 58. It concluded, in effect, that the Watsons had not shown any educational necessities or special circumstances why their children needed to attend parochial school in lieu of the available public school. The court went on to say:

> The only reason advanced by [the debtors] is preferential, i.e., their children have always attended parochial school because of the family's strong religious ties. . . . Allowing these Debtors to pay parochial school tuition which over the life of the Plan will exceed the amount distributed to creditors, is to require general creditors to fund the private education of the Debtors' kids.

Id. at 58-59.

As noted above, we defer broadly to the bankruptcy court's determinations in a matter of this type, which entail balancing the creditors' rights against the appropriate basic needs of the debtors and their dependents. We can find no clear error in the balance the court struck here in its thoughtful opinion.

The Watsons complain that they were unfairly criticized by the court for what it found was their unwillingness to forgo certain "borderline and/or excessive expenses" while also claiming the tuition expense. We have examined the record and see no clear error in the court's overall assessment in this regard.

To allow the Watsons to pay parochial school tuition over the life of the proposed plan would require already severely

-15-

reduced creditors to fund the private education of the Watsons' children. We can appreciate the importance attached by the Watsons to the religious values of a parochial school education. Still, it is not impossible to inculcate those values outside of a school, and the court could reasonably conclude, in the circumstances presented here, that it would be improper to impose the added expense on the Watsons' unpaid creditors where the children's educational needs could otherwise be met in the public schools. There was no clear error in the bankruptcy court's determination.

## IV.  Conclusion

For the foregoing reasons, the order of the United States Bankruptcy Court order denying confirmation of the plan is **<u>affirmed</u>**.