**In re James A. SMIHULA, Jean M. Smihula, Debtors.**

**Bankruptcy No. 98–13949.**

United States Bankruptcy Court, D. Rhode Island.

May 24, 1999.

Christopher M. Lefebvre, Pawtucket, RI, for Debtors.

Sheryl Serreze, Assistant U.S. Trustee, Office of the United States Trustee, Providence, RI.

### § 707(b) CONDITIONAL ORDER OF DISMISSAL

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Before the Court is the United States Trustee's Motion to Dismiss the Debtors' Chapter 7 case, pursuant to 11 U.S.C. § 707(b). The facts are not in dispute and it is agreed that no further hearing is necessary, therefore the matter may be decided on the papers. This is how the parties have framed the issue:

> Whether the Bankruptcy Court may consider the Debtors' post-petition commencement of charitable contributions in determining whether the granting of a discharge in this case would be a substantial abuse as defined by 11 U.S.C. § 707(b) under the totality of the circumstances test enunciated in *First USA v. Lamanna (In re Lamanna)*, 153 F.3d 1 (1st Cir.1998).

We answer this question in the affirmative and rule that granting a discharge in this Chapter 7 case would amount to substantial abuse under 11 U.S.C. § 707(b).

### BACKGROUND

On September 25, 1998, James and Jean Smihula filed a petition under Chapter 13, then on November 5, 1998 they filed a notice of voluntarily conversion to Chapter 7, together with a Motion to Amend Schedules I & J. The Debtors' original Schedules I and J disclose monthly net income of $4,189 and expenses of $3,251, leaving $865 per month to fund the Plan. The only significant change in the amended schedules is that Debtors' monthly charitable contribution went from $0 to $700 per month, pretty much eliminating their net disposable income.

The Debtors readily admit that the decision to make charitable contributions of $700 per month was made *after* the Chapter 13 filing, and it is undisputed that the Debtors have been actually making these contributions post-petition.[1] The Debtors also admit that they prefer to use their disposable income for charitable purposes of their choice, rather than paying their creditors through a Chapter 13 plan which would yield at least a 40% dividend.[2]

In support of their position the Debtors argue that recent amendments under The Religious Liberty and Charitable Donation Protection Act of 1998, *see* P.L. No. 105–183, prohibit the Bankruptcy Court from considering whether the Debtors "have made, or continue to make" charitable contributions in determining dismissal under Section 707(b). They also argue that:

> It is highly discriminatory and perhaps even unconstitutional to interpret 707(b) so as to allow an individual debtor who "found God" prior to bankruptcy and gave to charity regularly, to escape payment of his debts in favor of charitable and/or religious giving, yet deny the same relief to a debtor who "found God" subsequent to seeking bankruptcy protection.

The recent legislation and its history, however, do not support the Debtors' position.

---

1. It is not alleged or suggested that the Debtors are using this charitable donation as a rouse to pocket the $700 per month for their personal benefit.

2. The Debtors list total unsecured debt of $61,348. *See* Schedule E.

## DISCUSSION

■ Section 707(b) as amended by The Religious Liberty and Charitable Donation Protection Act of 1998 states:

> (b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor. *In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).*

11 U.S.C. § 707(b) (West 1998) (emphasis added to show amendment). In determining substantial abuse under this section, the First Circuit Court of Appeals in *First USA v. Lamanna (In re Lamanna)*, 153 F.3d 1, 4–5 (1st Cir.1998), held that "in assessing the totality of a debtor's circumstances, courts should regard the debtor's ability to repay out of future disposable income as the primary, but not necessarily conclusive, factor of 'substantial abuse.'" *Id.*

The amendment states clearly that the Court cannot consider whether a debtor *"has made* or *continues to make"* charitable contributions, when determining substantial abuse. This language, which needs no interpretation or construction, *requires* that as of the petition date the debtor had established a history of charitable giving. This bolsters a major purpose

of the legislation: to protect "religious and charitable organizations from having to turn over to bankruptcy trustees donations these organizations received from individuals who subsequently file for bankruptcy relief. In addition, the bill protects *the rights of debtors to continue to make* religious and charitable contributions after they file for bankruptcy relief." H.R.Rep. No. 556, 105th Cong., 2ND Sess.1998, 1998 WL 285820 at *2. Additionally, throughout the legislative history, its proponents make it clear that the amendment was not intended to allow debtors to begin making charitable contributions on the eve of bankruptcy.[3] Professor Douglas Laycock of the University of Texas Law School, in a statement submitted for the record and included in the Committee on the Judiciary's report, said:

> If I have been going along for years putting $5 a week in the collection plate and all of a sudden, before I file for bankruptcy, I clean out my last account and give 15 percent of my last year's income to my church, the trustee and the bankruptcy judge will look at the timing, the amount, the circumstances, the change in pattern, and they will say those are all badges of fraud. They will say I had the actual intent to hinder or defraud my creditors, and that is recoverable under section 548(a)(1). The fraud scenario is not going to happen.

Religious Liberty and Charitable Donation Protection Act of 1997 and Religious Fairness in Bankruptcy Act of 1997: Hearing on H.R.2604 and H.R.2611 Before the Subcomm. on Commercial and Administrative Law of the House Comm. on the Judiciary, 105th Cong. (Feb. 12, 1998) [hereinafter "Hearing"]; *see also* H.R.Rep. No. 556, 105th Cong., 2ND Sess.1998, 1998 WL 285820 at *8.

Senator Grassley, addressing the identical provision in his bill, S.1244, stated:

---

3. Or even worse, to file a Chapter 13 case showing enough disposable income to pay creditors a significant dividend, and then to

use the recent amendments as the basis for converting to Chapter 7, and paying creditors nothing.

[T]he bill does not amend section 548(a)(1) of the Bankruptcy Code. This section lets bankruptcy courts recover any transfer of assets on the eve of bankruptcy if the transfer was made to delay or hinder a creditor. Therefore, if the bill is enacted, we don't have to worry about a sudden rash of charitable giving in anticipation of bankruptcy. Such transfers would obviously be for the purpose of hindering creditors and would still be subject to the bankruptcy judge's powers. In other words, there really isn't much room for abuse as a result of my legislation.

Hearing, cited *infra; see also* H.R.Rep. No. 556, 105th Cong., 2ND Sess.1998, 1998 WL 285820 n. 21 at *30.

Finally, the remarks of Representative Packard further evidence the Congressional intent that debtors should not be able to begin making charitable contributions post-petition, and thereby avoid paying their creditors in bankruptcy:

We have tried desperately to craft language that would protect and avoid and prevent fraud. No one, certainly this member, does not wish to lay any groundwork that would allow someone to fraudulently use the church or a charitable organization to make a contribution to avoid their creditors if they are going into bankruptcy. I would be the very last to wish for that. We have tried to put language in this bill that would protect against that kind of fraudulent effort.

Hearing, cited *infra; see also* H.R.Rep. No. 556, 105th Cong., 2ND Sess.1998, 1998 WL 285820 n. 37 at *36.

While these Debtors emphasize that they did not commence charitable giving with the *actual* intent to hinder, delay or defraud creditors, and that they have in fact continued giving to various charities throughout the pendency of this litigation, the effect of their actions cannot be overlooked. What these Debtors are doing, regardless of their stated intent, is to rewrite the law in accordance with their personal wishes, to the detriment of creditors who, under § 707(b), have a vested interest in their disposable income. Based upon the clear language of the statute in question and the reported history, it is the ruling of this Court that the issue of timing, i.e., *just when* a debtor commences charitable giving, is very relevant to the 707(b) inquiry. Where the debtor's charitable giving instinct arises shortly prepetition, and surely where it arises post-petition, as here, it is unthinkable that the Court would not have the authority to examine such circumstances.

Based upon the plain language of the statute, the legislative history, and applying the *Lamanna* test to the facts of this case, we find that substantial abuse exists under Section 707(b), for the following reasons:

(1) The Debtors have $61,348 of unsecured creditors, the majority of which is consumer debt;

(2) Both Debtors are stable wage earners, with Mr. Smihula employed for 28 years at his job, and Mrs. Smihula for 13 years at her job;

(3) The Debtors have net monthly income of $4,089, and expenses of $3,951;

(4) The Debtors' Chapter 13 petition indicates that they are able to pay $865 monthly into a plan;

(5) Excluding their charitable contributions, which were commenced post-petition, the Debtors have net disposable monthly income of $838;

(6) The Debtors have sufficient disposable income to pay a substantial dividend to unsecured creditors with relative ease, and without depriving themselves of adequate food, clothing, shelter and other necessities.

Based on the undisputed facts, it is the ruling of this Court that granting these Debtors relief under Chapter 7 would amount to substantial abuse, and would constitute a perversion of the amended

statute. Accordingly, the United States Trustee's Motion to Dismiss is GRANTED, on the condition that the Order of Dismissal will become final in fifteen days unless the Debtors convert their case to Chapter 13, with plan provisions substantially similar to those in their original Chapter 13 filing.

Enter Judgment consistent with this order.