**In re Kevin T. CAVANAGH and Tina M. Evje–Cavanagh, Debtors.**

**Robert G. Drummond, Chapter 13 Standing Trustee, Appellant,**

v.

**Kevin T. Cavanagh and Tina M. Evje–Cavanagh, Appellees.**

**BAP No. MT–00–1040.**

**Bankruptcy No. 99–42161–13.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 16, 2000.

Decided June 13, 2000.

Robert G. Drummond, Great Falls, MT, Pro se, Chapter 13 Standing Trustee.

R. Clifton Caughron, Helena, MT, for Kevin and Tina Cavanagh.

Before: RYAN, KLEIN, and RUSSELL, Bankruptcy Judges.

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

## OPINION

RYAN, Bankruptcy Judge.

After Kevin Cavanagh and Tina Evje–Cavanagh ("Debtors") amended their first chapter 13[1] plan (the "Plan") and schedules I and J, chapter 13 trustee Robert Drummond ("Trustee") filed an objection (the "Objection") to Debtors' amended chapter 13 plan (the "Amended Plan"). The basis for the Objection was that (1) Debtors' newly-added expense of $234 per month for a charitable contribution to their church (the "Charitable Contribution") was not reasonably necessary and detracted from Debtors' disposable income and (2) the Amended Plan was not proposed in good faith.

After a hearing, the bankruptcy court issued a published opinion overruling the Objection and confirming the Amended Plan. See In re Cavanagh, 242 B.R. 707 (Bankr.D.Mont.2000). Trustee timely appealed.

We AFFIRM.

## I. FACTS

On August 16, 1999, Debtors filed a chapter 13 petition and schedules. On schedule I, Debtors listed a monthly net income of $2,056.24. On schedule J, they disclosed monthly expenses of $1,691 and did not allocate any money to charitable contributions. In response to a question on the statement of financial affairs that required disclosure of any charitable contributions of $100 or more within the one year preceding the filing of the bankruptcy petition, Debtors indicated that there were none.

On September 10, 1999, Debtors filed the Plan, which provided for thirty-nine monthly payments of $365. On November 23, 1999, Trustee objected to confirmation of the Plan because (1) the Plan failed to pay a creditor as required under § 1325(a)(5) and (2) after moving to North

Dakota, Kevin received a promotion but Debtors had failed to amend their schedules to reflect any change in income or expenses, therefore rendering Trustee unable to verify that Debtors were committing all of their disposable income to the Plan as required under § 1325(b)(1)(B).

On December 1, 1999, Debtors amended schedule I to reflect an increase in their net income to $2,643.42 and amended schedule J to reflect an increase in their expenses to $2,259, including for the first time the Charitable Contribution. The Amended Plan provided that Debtors would make three monthly payments of $365 and thirty-three monthly payments of $385.

On December 2, 1999, Trustee filed the Objection, alleging that the Charitable Contribution was not reasonably necessary for the maintenance or support of Debtors or their dependents as required by § 1325(b)(2)(A). Because the statement of financial affairs indicated that they had made no charitable contributions in the one year preceding the filing of the bankruptcy petition and the initial schedule J did not allocate any money for charitable contributions, Trustee alleged that "their sudden charitable spirit is unnecessary and not essential to the maintenance or support of the Debtors." Trustee's Objection to Confirmation of Chapter 13 Plan, at 1. Trustee also contended that the Amended Plan was not proposed in good faith as required under § 1325(a)(3).

After a hearing on confirmation of the Amended Plan at which Kevin testified, the court took the matter under submission. On January 7, 2000, it issued a published order that overruled the Objection and directed that a separate order be entered confirming the Amended Plan. On January 11, 2000, the order confirming the Amended Plan was entered, and Trustee timely appealed.

## II. ISSUES

A. Whether the bankruptcy court erred in finding that the Charitable Contribution was reasonably necessary for the maintenance and support of Debtors and their dependents under § 1325(b)(2)(A).

B. Whether the bankruptcy court erred in finding that Debtors proposed the Amended Plan in good faith as required by § 1325(a)(3).

## III. STANDARD OF REVIEW

 We review a bankruptcy court's interpretation of the Code de novo. *See California Central Trust Bankcorp v. Been (In re Been)*, 153 F.3d 1034, 1036 (9th Cir.1998). A bankruptcy court's determination that a chapter 13 plan is proposed in good faith is a finding of fact reviewed for clear error. *See Henrichsen v. Scovis (In re Scovis)*, 231 B.R. 336, 339 (9th Cir. BAP 1999).

## IV. DISCUSSION

A. *The Bankruptcy Court Did Not Err in Finding That the Charitable Contribution Was Reasonably Necessary for the Maintenance and Support of Debtors and Their Dependents Under § 1325(b)(2)(A).*

Section 1325(b) provides in pertinent part that

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

. . . .

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor, including charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to a qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)) in an amount not to exceed 15 percent of the gross income of the debtor for the year in which the contributions are made.

11 U.S.C. § 1325(b). Section 1325(b)(2)(A) was amended by the Religious Liberty and Charitable Donation Protection Act of 1998, Pub.L. No. 105–183 (1998) (the "1998 Act"). Prior to the amendment, some courts had held that charitable contributions could never be reasonably necessary for the support or maintenance of the debtor or the debtor's dependents. *See In re Buxton*, 228 B.R. 606, 609 (Bankr. W.D.La.1999) (citing cases). The 1998 Act was intended to "protect[ ] the rights of debtors to continue to make religious and charitable contributions after they file for bankruptcy relief." H.R. REP. No. 105–556 (105th Cong.), *reprinted in* F L. KING, COLLIER ON BANKRUPTCY App. Pt. 41(*o*)(ii)(A), at App. Pt. 41–260 (15th ed. rev.1999).

During the confirmation process, Trustee did not dispute that Debtors' church was a qualified religious entity or that the Charitable Contribution was well within the fifteen percent limitation specified under § 1325(b)(2)(A). *See* 11 U.S.C. § 1325(b)(2)(A). Instead, Trustee contended that despite the 1998 Act, the court still had to determine whether the Charitable Contribution was reasonably necessary for the maintenance or support of Debtors or their dependents. Because Debtors had not previously made charitable contributions and appeared to have "suddenly found God," Trustee alleged that the Charitable Contribution was unnecessary for Debtors' support, citing *Buxton*, 228 B.R. at 610. Trustee's Objection, at 1.

In *Buxton*, the court noted that the 1998 Act overturned the line of cases that held that charitable contributions could never be reasonably necessary for the maintenance and support of a debtor or the debtor's dependents and "now makes clear that such living expenses may include charitable contributions." *Buxton*, 228 B.R. at 610. It went on to hold that

> Congress, however, must have intended some limitation on a debtor's right to make charitable contributions, as the legislation only provides that such contributions may be included in the debtor's living expenses. Those expenses, however, must still be determined by the court to be reasonable.

*Id.* The court noted that this interpretation was consistent with cases decided prior to the 1998 Act that held that a debtor was entitled to a reasonable level of charitable contributions. Because the debtors sought to make monthly charitable contributions of $280 while proposing to pay monthly plan payments of $322 to $330 that would result in a three percent dividend being distributed to unsecured creditors over the life of the plan, the court held that this level of charitable contributions was unreasonable under the circumstances. *Id.* at 611.

Here, the court declined to follow *Buxton* because "such reasoning ignores the plain language of § 1325(b)(2)(A) which sets forth Congress' specific intention to establish a limit for charitable contributions at 15 percent of the Debtor's gross income." *Cavanagh*, 242 B.R. at 710–11. Instead, it held that a charitable contribution to a qualified religious entity was reasonably necessary for the maintenance and support of the debtor as long as the contribution did not exceed fifteen percent of the debtor's gross income. With respect to the fact that Kevin had not previously tithed, the court noted that "Congress made no distinction in § 1325(b)(2)(A) between new or increased charitable contributions versus pre-petition contributions" and "having made no such distinction be-

tween past and present practices of the debtor ... this Court will make none." *Id.* at 712. Therefore, the court held that the Charitable Contribution was reasonably necessary for Debtors' maintenance and support.

On appeal, Trustee urges us to adopt the analysis set forth in *Buxton* because "[l]ike all other expenditures, the statute still requires that charitable contributions be 'reasonable and necessary' for the maintenance or support of the debtor." Appellant's Opening Br., at 11. Trustee contends that the Charitable Contribution was not reasonably necessary for Debtors' maintenance and support because Debtors had no recent history of tithing and commenced making the Charitable Contribution postpetition. We disagree.

■ It is a maxim of statutory interpretation that "[t]he plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (citation and internal quotation marks omitted). Therefore, we must first turn to § 1325.

■ Section 1325 provides that the court shall confirm a plan if it satisfies the conditions set forth in § 1325(a). *See* 11 U.S.C. § 1325. If the chapter 13 trustee or an unsecured creditor objects, the court cannot approve the plan unless the debtor has pledged under the plan all projected disposable income for at least three years. *See* 11 U.S.C. § 1325(b)(1)(B). "Disposable income" is defined as that income which is not reasonably necessary for the "maintenance or support of the debtor or a dependent of the debtor, including charitable contributions ... to a qualified reli-

gious or charitable entity or organization ... in an amount not to exceed 15 percent of the gross income of the debtor." 11 U.S.C. § 1325(b)(1)(2)(A).

■■ The above statutory language is clear and unambiguous and is not demonstrably in conflict with congressional intentions. A debtor need not pledge income that is reasonably necessary for the debtor's maintenance and support. Maintenance and support is plainly intended to include charitable contributions that do not exceed fifteen percent. Accordingly, a court is not supposed to engage in a separate analysis to determine whether charitable contributions up to fifteen percent are reasonably necessary for the debtor's maintenance and support. This interpretation of the plain language of § 1325(b)(2)(A) is also consistent with other provisions of the Code and congressional intentions in those areas.

For example, § 707(b) grants the court discretion to dismiss a consumer case for substantial abuse. *See* 11 U.S.C. § 707(b). Case law has generally determined that a substantial abuse occurs when the debtor can fund a chapter 13 plan. *See Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 912 (9th Cir.1988); *Gomes v. United States Trustee (In re Gomes)*, 220 B.R. 84, 88 (9th Cir. BAP 1998). However, in making a § 707(b) determination, the court may not consider whether a debtor has made or continues to make charitable contributions. *See* 11 U.S.C. § 707(b).[2] Therefore, with respect to the § 707(b) analysis, no limitation is placed on the amount of charitable contributions.

Prior to the 1998 Act, some courts viewed certain prepetition transfers to charitable organizations as fraudulent transfers under § 548. Under the 1998 Act, § 548 specifically excludes any trans-

---

**2.** This section provides that

[i]n making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the defi-

nition of "charitable contributions" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

11 U.S.C. § 707(b).

fers to charitable organizations where the sum of the transfers does not exceed fifteen percent of the gross annual income of the debtor, or if the sum exceeds fifteen percent, the transfers are consistent with past practices. *See* 11 U.S.C. § 548(a)(2).

Thus, with the 1998 Act, Congress unequivocally established the priority of charitable contributions. The clear and unmistakable message is that the interests of creditors are subordinate to the interests of charitable organizations, and we must follow this mandate. The *Buxton* approach of superimposing a reasonableness standard over the fifteen percent limitation is inconsistent with congressional will as expressed in § 1325(b)(2)(A). Under § 1325(b)(2)(A), annual charitable contributions of up to fifteen percent of the debtor's gross income are deemed reasonably necessary for the maintenance and support of the debtor.

A leading treatise agrees with this interpretation. "[T]he amount a debtor may contribute [charitably] is limited to 15 percent of the debtor's gross income for any particular year." 8 L. KING, COLLIER ON BANKRUPTCY, ¶ 1325.08[4][b][iii], at 1325–57 (15th ed. rev.1999). The language of § 1325(b)(2)(A) "appears to permit a debtor to increase contributions after bankruptcy if the debtor would prefer to make contributions to charity rather than pay greater amounts to unsecured creditors." *Id. Collier* further notes that "[i]t is doubtful whether a bankruptcy court would have the authority to find such contributions to be not reasonably necessary now that Congress has set a specific amount that it has defined as reasonably necessary." *Id.*

■ Here, the Charitable Contribution constitutes approximately seven percent of Debtors' gross annual income. Thus, because the plain language of § 1325(b)(2)(A) provides that a debtor may contribute up to a maximum of fifteen percent of the debtor's gross annual income and the Charitable Contribution is well within that limit, the bankruptcy court did not err in finding that the Charitable Contribution

was a reasonably necessary expense and that Debtors satisfied the disposable income test.

**B.** *The Bankruptcy Court Did Not Err in Finding Debtors Filed the Amended Plan in Good Faith.*

Section 1325(a)(3) provides that in order to confirm a chapter 13 plan, the court must find that "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). Trustee argued that Debtors did not propose the Amended Plan in good faith because Debtors "suddenly found God," Debtors had not been making the Charitable Contribution prepetition, and the Charitable Contribution was unnecessary to maintain or support Debtors. Trustee's Objection, at 1.

The court disagreed, holding that it had "observed Kevin's demeanor while testifying under oath, and [found] no reason to doubt his credibility or the sincerity of his religious conversion and beliefs regarding tithing." *Cavanagh*, 242 B.R. at 712. It also disregarded Trustee's argument that the timing of the Charitable Contribution intimated bad faith, holding that "Congress having made no such distinction between past and present practices of the debtor in making charitable contributions in § 1325(b)(2)(A), this Court will make none." *Id.* Therefore, it held that Debtors had proposed the Amended Plan in good faith.

On appeal, Trustee contends that the bankruptcy court failed to consider the totality of the circumstances when it found that the Amended Plan was proposed in good faith. Specifically, he argues that the Debtors' inability to make the Charitable Contribution until after they filed their bankruptcy petition was

> unfair manipulation of the Bankruptcy Code and egregious behavior sufficient to deny confirmation. Given that the debtors have no prior history of charitable contributions, it is incredible that the

debtors can take the position that the disposable income requirement gives them unfettered license to begin making charitable contributions while their unsecured creditors are being paid nothing.

Appellant's Opening Br., at 13. Trustee also contends that the Amended Plan was intended to strip down a lien on Debtors' car. Under the totality of the circumstances, he argues that the court erred in determining that the Amended Plan was proposed in good faith. We disagree.

In *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224 (9th Cir.1999), the Ninth Circuit held that in determining whether a chapter 13 plan was proposed in good faith, a bankruptcy court should consider (1) whether the debtor misrepresented facts in his plan or unfairly manipulated the Code, (2) the debtor's history of filings and dismissals, (3) whether the debtor intended to defeat state court litigation, and (4) whether egregious behavior is present. *Id.* (citations omitted).

Although the plain language of § 1325(b)(2)(A) does not restrict the timing of a debtor's tithing or prevent a debtor from increasing the amount of a charitable contribution on the eve of bankruptcy or after a bankruptcy petition is filed, these are factors that ought be taken into consideration when looking at the totality of the circumstances to determine whether a debtor has proposed a chapter 13 plan in good faith and in compliance with § 1325(a)(3). Indeed, the 1998 Act's legislative history indicates that

> "[w]e have tried desperately to craft language that would protect and avoid and prevent fraud. No one ... wish[es] to lay any groundwork that would allow someone to fraudulently use the church or a charitable organization to make a contribution to avoid their creditors if they are going into bankruptcy."

*In re Smihula*, 234 B.R. 240, 243 (Bankr. D.R.I.1999) (quoting *Hearing on H.R. 2604 and H.R. 2611 Before the Subcomm. on Commercial and Administrative Law of the House Comm. on the Judiciary*, 105th Cong. (Feb. 12, 1998) (statement of Rep. Packard)). Thus, a debtor's purpose in commencing or increasing the amount of tithing on the eve of filing for bankruptcy or shortly after a petition is filed is relevant to a determination of whether egregious behavior is present that would tend to show that a chapter 13 plan was not proposed in good faith as required by the Code.

Here, the bankruptcy court heard Kevin's testimony regarding Debtors' decision to begin tithing and was satisfied that the Amended Plan was proposed in good faith. This conclusion was supported by the evidence. Kevin testified that Debtors chose to begin tithing after he had begun the process of becoming a member of the Mormon Church. Tina had been a long-time member who tithed until she married Kevin and they started having financial problems. During this period of economic hardship, Kevin testified that the Mormon Church helped Debtors pay their utility bills and that he felt it did not make sense to tithe while receiving aid. He also testified that while tithing was not required by the Mormon Church, it was strongly recommended and that he believed that it was important. Additionally, when asked what caused Debtors to file their bankruptcy petition, Kevin testified that approximately six months prepetition, Debtors' daughter had been born prematurely and that this had caused Tina to quit her job so that she could care for her. Kevin also testified that they filed for bankruptcy in order to permit them to retain possession of a 1997 Ford Taurus.

This testimony amply supports the court's finding that the Amended Plan was proposed in good faith. The court was convinced of the sincerity of Kevin's convictions and believed that he was credible. There was no evidence that Debtors began tithing to prevent their creditors from receiving a distribution or that they had any motive in filing for bankruptcy other than seeking a fresh start after they encountered financial hardship. Accordingly, the court did not err in finding that Debtors proposed the Amended Plan in good faith.

## V. CONCLUSION

In sum, the plain language of § 1325(b)(2)(A) provides that a charitable contribution that does not exceed fifteen percent of a debtor's gross income and that is made to a qualified entity or organization is deemed reasonably necessary for the maintenance and support of the debtor or the debtor's dependents. Because the Charitable Contribution met these qualifications, the court did not err in finding that Debtors had pledged all of their projected disposable income to their creditors under the Amended Plan.

However, the fact that a charitable contribution may satisfy § 1325(b)(2)(A) does not render irrelevant a debtor's purpose in commencing or increasing the amount of a charitable contribution. Instead, the court should consider this factor in determining whether the plan was proposed in good faith. Here, there was ample evidence of the sincerity of Debtors' religious beliefs and their good faith in proposing the Amended Plan. Accordingly, the court did not err in holding that Debtors had satisfied § 1325(a)(3).

AFFIRMED.