**Michael WATSON and Kathleen Watson, Debtors.**

**Michael Watson and Kathleen M. Watson, Appellants,**

v.

**John Boyajian, Chapter 13 Trustee, Appellee.**

**BAP No. RI 03–078.**

**Bankruptcy No. 03–10179–ANV.**

United States Bankruptcy Appellate Panel for the First Circuit.

May 21, 2004.

---

Christopher M. Lefebvre, Pawtucket, RI, on brief for Appellants.

John Boyajian, Providence, RI, on brief for Appellee.

Before DE JESÚS, HILLMAN, and ROSENTHAL, U.S. Bankruptcy Appellate Panel Judges.

PER CURIAM.

The United States Bankruptcy Appellate Panel for the First Circuit (the "Panel") has before it Michael and Kathleen Watson's (the "Appellants") appeal of the September 15, 2003 order of the United States Bankruptcy Court for the District of Rhode Island (the "Bankruptcy Court") denying confirmation of their Chapter 13 plan (the "Order"). We affirm.

## BACKGROUND

On January 17, 2003, the Appellants filed a joint petition under Chapter 13 of the United States Bankruptcy Code;[1] shortly thereafter, they filed their Chapter 13 plan. The Appellants' Schedules I and J showed net monthly income of $5,770 and expenses of $4,194, leaving $1,576 a month in disposable income. The plan provided for thirty-six monthly payments of $1,576 (totaling $56,736), which would have paid unsecured creditors twenty-five percent of their claims. The Chapter 13 trustee objected to confirmation on the grounds that the Appellants were not contributing all of their disposable income as required under 11 U.S.C. § 1325(b)(1)(B). Specifically, the trustee objected to a claimed expense of $735 per month for Catholic school tuition for the Appellants' two minor children. The Appellants maintain the expense is reasonably necessary under the circumstances, or that the expense is a "charitable contribution" and is therefore *de facto* reasonably necessary under the Religious Liberty and Charitable Donation Protection Act of 1998. Lastly, the Appellants argue that the Religious Freedom Restoration Act ("RFRA") protects their use of disposable income for payment of their children's private religious school tuition.

The Bankruptcy Court held an evidentiary hearing that focused primarily on the issue of the Appellants' $735 monthly expense for private religious school tuition. *See* App. at tab 3, page 1. At the hearing, Mr. Watson testified that the $735 figure includes the tuition for his two minor children to attend local Catholic middle and high schools, plus an additional $40 per month for "miscellaneous school activity" such as materials for take-home projects. *Id.* at 5. Mr. Watson further testified that he, his wife, and both children are practicing Roman Catholics who attend church every Sunday and during all of the holy days of obligation. *Id.* at 7–8. Mr. Watson testified that he is actively involved in church ministry, and that his children have been assisting at mass since the third grade. *Id.* at 8–9. Mr. Watson explained that the Appellants have always sent their children to Catholic schools because they value the importance such schools place on God. *Id.* at 7. The tuition is less than fifteen percent of the Appellants' gross annual income.

At the conclusion of the hearing, the Bankruptcy Court took the matter under advisement, and requested written submissions from the parties. Further oral argument was heard at a later date. On September 15, 2003, the Bankruptcy Court issued the Order denying confirmation of the Appellants' Chapter 13 plan, (1) finding that the private school tuition expense is not reasonably necessary, and (2) concluding that the Religious Liberty and Charitable Donation Protection Act of 1998 does not apply in this case. The Order was accompanied by a written opinion in which the Bankruptcy Court found that the Appellants had claimed many border-

---

**1.** Unless otherwise indicated, all references to the "Bankruptcy Code" or the "Code" and all references to statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, *et seq.*

line and/or excessive expenses, that they were unwilling to extend their plan beyond three years, and that the Appellants' plan therefore failed to demonstrate good faith. App. at tab 8, page 6. The Bankruptcy Court further found that the Appellants had not shown that the public schools in their area were inadequate, or that their children had special needs that the public schools could not meet. *Id.* Lastly, the Order provided that, in accordance with local rules, the Appellants had eleven days to file an amended plan. This appeal followed.

## JURISDICTION

■ A bankruptcy appellate panel may hear appeals from "final judgments, order and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted). An interlocutory order "'only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" *Id.* (*quoting In re American Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)). A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits even if not raised by the litigants. *See In re George E. Bumpus, Jr. Constr. Co.*, 226 B.R. 724 (1st Cir. BAP 1998).

## STANDARD OF REVIEW

■ Appellate courts reviewing an appeal from a bankruptcy court generally apply the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law. *See T I Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719–20, n. 8 (1st Cir. 1994). In the present case, the Bankruptcy Court rendered its decision based in part upon a determination that the private schooling of the Appellants' two minor children was not reasonably necessary under the circumstances. The Bankruptcy Court's determination turned on a finding of a lack of good faith with regard to the Appellants' expenses and proposed plan, as well as findings of fact with regard to the educational needs of the Appellants' children. We apply the clearly erroneous standard to such findings.

■ The clearly erroneous standard requires us to give great deference to the Bankruptcy Court as the trier of fact. Under this standard, a finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Cabral v. Shamban (In re Cabral)*, 285 B.R. 563, 571 (1st Cir. BAP 2002); *Gray v. Travelers Ins. Co. (In re Neponset River Paper Co.)*, 231 B.R. 829, 830 (1st Cir. BAP 1999). If the trial court's account of the evidence is plausible in light of the record reviewed in its entirety, a reviewing court may not reverse even if convinced that it would have weighed the evidence differently as a trier of fact. *Anderson*, 470 U.S. at 574, 105 S.Ct. 1504.

■ The Bankruptcy Court also based its decision on interpretation of the "charitable contribution" exception to § 1325(b)(2)(A). Where the issue on appeal is essentially one of statutory con-

struction, the Panel reviews the issue *de novo*. Therefore, the "charitable contribution" issue is a conclusion of law that we review *de novo*. *See Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir.1995); *In re SPM Mfg. Corp.*, 984 F.2d 1305, 1311 (1st Cir. 1993).

## DISCUSSION

### A. Interlocutory Appeal

 Denial of confirmation of a proposed Chapter 13 plan is not a final order where the debtor is free to propose an alternate plan. *See Bentley v. Boyajian (In re Bentley)*, 266 B.R. 229 (1st Cir. BAP 2001). Here, the Bankruptcy Court did not dismiss the case when it denied confirmation of the Appellants' proposed plan, and the Appellants were therefore free to propose an alternate plan. Indeed, the Order directed the Appellants to file an amended plan within eleven days of the Order. Thus, the Order was clearly not intended to serve as an end to ligation on the merits of confirmation. *See Bank of New England*, 218 B.R. at 646. Instead, the Order is an interlocutory order that only decided an intervening matter pertaining to confirmation. Further steps were required in order to enable the Bankruptcy Court to adjudicate the matter of confirmation. *See id.* Accordingly, the Order is not appealable as of right. *See id.* at 647.

 Although the Order is interlocutory, the Panel may nonetheless find that it has jurisdiction over this appeal.[2] The Panel has discretionary authority to grant leave to appeal from interlocutory orders under one of three precepts conferring appellate jurisdiction over interlocutory appeals: (1) the collateral order doctrine, (2) the application of the criteria governing § 158(a)(3) review of interlocutory orders, or (3) the Forgay–Conrad doctrine. *See* 28 U.S.C. § 158(a)(3). For the reasons set forth below, the Panel finds that the Order satisfies the criteria governing § 158(a)(3) review of interlocutory orders.

Application of § 158(a)(3) review of interlocutory orders mirrors application of § 1292(b). *Bank of New England*, 218 B.R. at 652. "Section 158 provides no express criteria to guide our discretion, but most courts utilize the same standards as govern the propriety of district courts' certification of interlocutory appeals to the circuit courts under § 1292(b)." *Id.* (citations omitted). "Section 1292(b) permits appellate review of 'certain interlocutory orders, decrees and judgments [...] to allow appeals from orders other than final judgments when they have a final and irreparable effect on the rights of the parties.'" *Id.* at 652 n. 17. "To ascertain whether we should exercise our discretion [...] we will consider whether (1) the 'order involves a controlling question of law' (2) 'as to which there is substantial ground for difference of opinion,' and (3) whether 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *Id.* at 652.

 1. *Controlling Question of Law.* An order involves a controlling question of law where the bankruptcy court's ruling presents a question of law that controls the outcome of the underlying case. *Id.* A question of law controls the outcome of the underlying case if no alternate theory exists on which the party could succeed. *Id.* at 652–53. Standing, for instance, is generally a controlling

---

2. Although no motion for leave to appeal is before us, the Panel may direct the Appellants to file a motion for leave to appeal, or may treat the Appellants' notice of appeal as a motion seeking leave to appeal an interlocutory order without requiring further pleadings. *See Bank of New England*, 218 B.R. at 648–49 (*citing* Fed. R. Bankr.P. 8003(c)).

question of law, as the case will be dismissed if the plaintiff is found to lack standing. *Id.* at 653. Here, the questions of whether the private school tuition is a reasonably necessary expense, either by circumstance or under the *de facto* exception, or whether RFRA protects a debtor's right to use disposable income to pay for private religious school tuition are controlling questions of law. There are no other theories by which the Appellants could propose a confirmable Chapter 13 plan and continue private schooling their children. *See id.*

■ 2. *Substantial Grounds for Difference of Opinion.* Substantial grounds for difference of opinion exist where the proposed interlocutory appeal presents one or more difficult and pivotal questions of law not settled by controlling authority. *Id.* Here, the question of whether private religious school tuition qualifies as a "charitable contribution" is well settled, as is the question of whether RFRA protects a Chapter 13 debtor's right to use disposable income for payment of a child's private religious school tuition. However, the question of whether private school tuition is a reasonably necessary expense under the circumstances of this case is not well settled in the First Circuit. There exist, therefore, substantial grounds for difference of opinion with regard to this question.

■ 3. *Materially Advance Ultimate Termination of the Litigation.* An interlocutory appeal materially advances the ultimate termination of the litigation where resolution of the issue on appeal "greatly assist[s]" in resolving the underlying matter, and does not unnecessarily delay resolution of the underlying matter. Here, the appeal materially advances the ultimate termination of the litigation by greatly assisting the confirmation process.

The Order therefore satisfies the requirements of the criteria governing § 158(a)(3), and we choose to exercise our discretionary authority to grant the Appellants leave to appeal.

**B. Reasonably Necessary Expense**

■ To be confirmable, a Chapter 13 plan must provide "that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan." 11 U.S.C. § 1325(b)(1)(B). "Disposable income" is defined in pertinent part as:

> income which is received by the debtor and which is not reasonably necessary to be expended—
>
> (A) for the maintenance or support of the debtor or a dependant of the debtor, including charitable contributions.

11 U.S.C. § 1325(b)(2)(A). In other words, a bankruptcy court cannot confirm a Chapter 13 plan in which the debtor's expenses are not reasonably necessary. It is the debtor's burden to prove that expenses are reasonably necessary. *In re Webb,* 262 B.R. 685 (Bankr.E.D.Tex.2001).

■ Generally, private school tuition is not a reasonably necessary expense. *See Webb,* 262 B.R. at 690; *Univest–Coppell Village, Ltd. v. Nelson,* 204 B.R. 497 (E.D.Tex.1996). When deciding whether private school education is reasonably necessary, bankruptcy courts examine the totality of the circumstances to determine whether the debtor's plan reflects a good faith effort to maximize repayment to creditors. *See id.* Bankruptcy courts have considered both the circumstances of the private schooling and the terms of the debtor's proposed Chapter 13 plan. *See id.* In particular, bankruptcy courts have examined whether debtors have chosen private school education only where a com-

pelling circumstance exists, or have compensated for such an expense by eliminating other reasonably necessary expenses such as health insurance. We adopt this two-pronged totality of the circumstances test.

■ 1. *Reason for the Private Schooling.* When considering the circumstances of the private schooling, bankruptcy courts have examined the reason for the private schooling, examining the adequacy of the public school alternative as a general matter and with respect to the particular educational needs of the student in question. *See Webb*, 262 B.R. at 690–91. Mere preference for private schooling is not sufficient. *See id.* (holding that private school education is reasonably necessary only where a "compelling circumstance" exists); *Univest–Coppell Village*, 204 B.R. at 500. In *Webb*, the bankruptcy court held that a compelling circumstance existed where the debtor's son had a learning disability and a social disorder, and assimilation into the public school had failed due to the lack of a "therapeutic educational environment." *Webb*, 262 B.R. at 690–91. Indeed, a medical doctor who specialized in child and adolescent psychiatry testified that the student's tendencies placed him at risk for substance abuse, and that the student's academic progress would be impeded or precluded in a typical public school environment. *Id.* at 688. In *Univest–Coppell Village*, however, the bankruptcy court found that private school tuition was not reasonably necessary where the debtor had expressed no particular problem with the quality of education provided at the local public school. *Univest–Coppell Village*, 204 B.R. at 500. There, the debtors had failed to demonstrate a particular educational need for private schooling. *See id.*

In the instant case, the Appellants have failed to demonstrate, or even argue, that either of their children require private schooling due to particular educational needs, or that the public school alternative cannot adequately meet their children's educational needs. Instead, the Appellants only demonstrated a mere preference for private schooling based on the family's strongly held religious beliefs. Such a preference, while apparently sincere, is not sufficient to render the expense of private school tuition reasonably necessary.

■ B. *The Terms of the Chapter 13 Plan.* When considering the terms of the Chapter 13 plan, bankruptcy courts have examined the expense of private school tuition relative to the debtor's other expenses, the debtor's total debt obligations under the plan, and the distribution creditors would receive. *See In re Burgos*, 248 B.R. 446, 450–51 (Bankr.M.D.Fla.2000); *In re Grawey*, 2001 WL 34076376 (Bankr. C.D.Ill. Oct. 11, 2001). In *Burgos*, the bankruptcy court confirmed a plan in which the proposed plan paid more money to unsecured creditors than the debtors would spend in private school tuition payments; moreover, the debtors had proposed a sixty month plan and a seventy percent distribution to unsecured creditors. *Burgos*, 248 B.R. at 450–51. In *Grawey*, the bankruptcy court held that $277 a month for parochial school tuition for the debtor's two children was reasonably necessary where the debtor had chosen to "sacrifice ... other basic necessities such as healthcare insurance." *In re Grawey*, 2001 WL 34076376 (Bankr. C.D.Ill. Oct. 11, 2001).

As the Bankruptcy Court pointed out in its written opinion, the terms of the Appellants' proposed Chapter 13 plan do not reflect a good faith effort to maximize repayment to the unsecured creditors. The Appellants have not demonstrated an attempt to offset the private school tuition expense by eliminating or minimizing oth-

er reasonably necessary expenses. Moreover, the Appellants proposed only a thirty-six rather than a sixty month plan, and proposed to repay unsecured creditors only twenty-five percent of the debt owed. The Bankruptcy Court was correct when it stated that allowing the Appellants to pay parochial school tuition under the terms of their proposed plan would have amounted to "requir[ing] general creditors to fund the private education of the Debtors' kids." App. at tab 8, page 7. The lack of compelling circumstances with respect to the children's educational needs makes it even more clear that private school tuition is not a reasonably necessary expense under the circumstances of this case.

As such, the Bankruptcy Court committed no clear error in concluding that the private school tuition expense is not reasonably necessary under the circumstances of this case.

## C. Charitable Contributions

■■■ Congress amended the definition of "disposable income" through the Religious Liberty and Charitable Donation Protection Act of 1998 (the "RLCDPA"). The amended definition provides that debtors are allowed to make "charitable contributions" totaling less than fifteen percent of their gross annual salaries. 11 U.S.C. § 1325(b)(2)(A). Such contributions are *de facto* "reasonably necessary." *See In re Kirschner*, 259 B.R. 416, 422 (Bankr.M.D.Fla.2001). Here, the cost of parochial school tuition for the Appellants' two minor children is less than fifteen percent of the Appellants' gross annual salary. The question remains, then,

whether parochial school tuition qualifies as a "charitable contribution" under § 548(d)(3).

■■■ Section 548(d)(3) adopts § 170(c) of the Internal Revenue Code of 1986, which states in part that a " 'charitable contribution' means a contribution or gift." 26 U.S.C. § 170(c). In *Kirschner*, the bankruptcy court distinguished between charitable contributions and private religious school tuition payments, explaining that while § 1325(b)(2)(A) protects the rights of debtors to continue making religious and charitable contributions after they file for bankruptcy relief, such protection does not extend to private religious school tuition payments. *See Kirschner*, 259 B.R. at 422–23 (stating that "Congress has yet to [...] protect tuition expenses for religious private schools"). Under both legal and non-legal definitions, a "gift" is something for which the giver receives nothing in return.

Here, however, the Appellants are not making a gift for which they receive nothing in return. To state the obvious, they receive educational services in return for their tuition payments. Indeed, as Mr. Watson testified, the Appellants and their children highly value the education received in return for their tuition payments. As such, the $735 monthly expense for the private schooling of the Appellants' two children is not a "charitable contribution" and is therefore not protected as a *de facto* reasonably necessary expense under § 1325(b)(2)(A). While the Appellants characterize such a distinction as "ridiculous," [3] the distinction remains

---

3. The Appellants and the Appellee operate under the misconception that the Appellants "could turn around and simply contribute $750 to their local catholic church or school," which the Appellants asserted in their memorandum supporting confirmation, and to which the Appellee stated in his response,

"This is absolutely correct." See App. at tab 6, page 3. However, it is not necessarily true that the Appellants could suddenly start donating $750 a month to their local catholic church or school. The charitable contribution exception simply provides that charitable contributions of the nature and amount pre-

nonetheless. It is for Congress to dictate otherwise. The Bankruptcy Court was therefore correct in concluding that the "charitable contribution" exception does not protect a Chapter 13 debtor's right to use disposable income for payment of private religious school tuition.

## D. Religious Freedom Restoration Act

 Whereas the Appellants' payment of private religious school tuition is not a reasonably necessary expense either by circumstance or under the *de facto* exception, the Appellants' proposed plan therefore fails to contribute all of their disposable income toward plan payments. The Appellants argue, however, that RFRA protects their right to use disposable income to pay for their children's private religious school tuition. *See* Appellants' Brief at 4–8. RFRA, in fact, does not provide such a right. *See Gary S. v. Manchester School District*, 241 F.Supp.2d 111, 122 (D.N.H.2003); *United States v. Acevedo–Delgado*, 167 F.Supp.2d 477, 480–81 (D.P.R.2001).

RFRA provides in pertinent part:

(a) In general

Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.

(b) Exception

Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb–1.

 RFRA establishes as a matter of statutory right, "the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), and *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), and to guarantee its application in all cases where free exercise of religion is substantially burdened." 42 U.S.C. § 2000bb(b)(1). RFRA therefore applies strict scrutiny to federal laws that place a substantial burden on a person's free exercise of religion. *See id.* The burden is on the Appellants to demonstrate that the denial of confirmation of their Chapter 13 plan substantially burdens their right to practice their Catholic faith. *See Gary S.*, 241 F.Supp.2d at 122.

 A government action substantially burdens a person's right to exercise his or her religion when it "has placed a substantial burden on the observation of a central belief or practice." *Hernandez v. Commissioner*, 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989); *Strout v. Albanese*, 178 F.3d 57, 65 (1st Cir.), *cert. denied*, 528 U.S. 931, 120 S.Ct. 329, 145 L.Ed.2d 256 (1999). "[E]ducation at a parochial school is not such a [central] belief, for the Roman Catholic Church does not mandate it." *Strout*, 178 F.3d at 65 (*citing*

---

scribed in the rule are *de facto* reasonably necessary. However, as the Bankruptcy Appellate Panel for the Ninth Circuit explained, the requirement that a Chapter 13 plan be proposed in good faith remains. *Drummond v. Cavanagh (In re Cavanagh)*, 250 B.R. 107 (9th Cir. BAP 2000). As such, bankruptcy courts may consider factors such as whether the debtor only recently began making the

charitable contributions or recently increased such contributions. *Id.* The *Kirschner* court explained that "Congress intended for the RLCDA to 'protect the rights of debtors *to continue to make* religious and charitable contributions after they file for bankruptcy relief.'" *Kirschner*, 259 B.R. at 422 (*citing* H.R.Rep. No. 05–556 (105th Cong.) (emphasis added)).

664

*Catechism of the Catholic Church* at 537–38 (1994)) (holding that statute authorizing direct grants of state funding to private non-sectarian high schools, but not sectarian high schools, for reimbursement of tuition for students that had no public education facilities available did not place a substantial burden on the plaintiffs' right to practice their Catholic faith); *Gary S.,* 241 F.Supp.2d at 122 (explaining that "the Catholic faith does not require parents to educate their children in Catholic schools"); *see also Acevedo–Delgado,* 167 F.Supp.2d at 480–81 (holding that statute prohibiting trespass onto military installation did not place substantial burden on defendant's religious beliefs, because statute did not interfere with defendant's ability to attend religious services, pray, worship or fulfill his various ministerial duties). According to the Catholic Church's own catechism, parents' responsibilities for religious education takes place primarily in the home; choosing a religious school is a parent's right but not an absolute duty. *Strout,* 178 F.3d at 65 (*citing Catechism of the Catholic Church* at 537–38).

Thus, while the Appellants' religious beliefs appear to be sincere, we conclude that the Appellants have failed to demonstrate that the Order substantially burdens their right to practice their religion. The Order does not interfere with the Appellants' ability to attend religious services, pray, worship or fulfill their religious duties. *Acevedo–Delgado,* 167 F.Supp.2d at 480–81. Moreover, the Order does not interfere with the Appellants' ability to provide religious education to their children. *See Strout,* 178 F.3d at 65. In fact, the Order does not even prevent the Appellants from sending their children to private religious schools while seeking bankruptcy protection. Instead, the Order prevents the Appellants from expending $735 a month for private religious school tuition in the con-

text of a plan that does not reflect a good faith effort to repay creditors. The Appellants remain free to propose a new plan that does reflect a good faith effort to repay creditors.

## CONCLUSION

The Bankruptcy Court was not clearly erroneous in concluding that the private school tuition for the Appellants' minor children is not a reasonably necessary expense under the circumstances. Moreover, the Appellants' tuition payments are not a "charitable contribution," and therefore are not protected as a *de facto* reasonably necessary expense under RLCDPA. Lastly, we conclude that RFRA does not afford a Chapter 13 debtor the right to use disposable income for private religious school tuition payments. Accordingly, we AFFIRM the Bankruptcy Court's Order denying confirmation of the Appellants' Chapter 13 plan.