In re Tony and Martha
PETTY, Debtors.

No. 4:05 BK 26362.

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

Feb. 10, 2006.

806

Sherry L. Daves, Hot Springs, AR, for the debtors.

Kimberely F. Woodyard, for the chapter 13 trustee.

## MEMORANDUM OPINION AND ORDER

RICHARD D. TAYLOR, Bankruptcy Judge.

Before the Court is the chapter 13 trustee's objection to confirmation of the debtors' plan filed on November 28, 2005. The basis for the trustee's objection is that the debtors have scheduled monthly charitable contributions in the amount of $416.00 while only paying unsecured creditors approximately 1 percent of their claims over the life of the plan. The trustee has asked the Court to either dismiss the case pursuant to 11 U.S.C. § 1307, or deny confirmation of the debtors' plan and allow the debtors to submit a modified plan. The Court heard the trustee's objection on Jan-

uary 11, 2006. At the conclusion of the hearing, the Court took the matter under advisement. For the reasons stated below, the Court overrules the trustee's objection.

### JURISDICTION

This Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(L). The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052, made applicable to this proceeding under Federal Rule of Bankruptcy Procedure 9014(c).

### FINDINGS OF FACTS

The facts in this case are not in dispute. The debtor, Tony Petty, testified at the hearing that he was a member of First Assembly of God church and has been attending regularly for approximately seven years. He is a deacon at the church and also teaches Sunday school. According to the debtor, he tithes $104 a week, although he admitted it has not always been the same amount over the years. He testified that he and his wife do not spend much money on entertainment and only have one vehicle at the present time. He also testified that a significant portion of his debt is credit card debt, along with some medical debt. According to the debtors' bankruptcy schedules, which were introduced as Trustee's Exhibit 1, their debt to creditors holding unsecured nonpriority claims is $57,581.69.

The parties introduced the following stipulations into evidence at the hearing:

1. This Chapter 13 case was filed on October 13, 2005, and David D. Coop was appointed trustee in the case.

2. The plan provides for a payment to the trustee in the amount of $879 for

a period of 36 months. Unsecured creditors are designated to receive a *pro rata* payment on their claims. As of the date of this hearing, January 11, 2006, the payment to the unsecured creditors will be total [sic] $294 over the life of the plan, or less than 1%. The debtor's plan and schedules are appended as Exhibits A and B, respectively.

3. Schedule J reflects that the debtors have scheduled monthly charitable contributions in the amount of $416 per month, for a total of $14,976 for the 36 month period of the plan. Schedule I reflects that the debtors' monthly gross income is $4,073.34. Accordingly, their charitable contribution constitutes 9.8% of their gross income.

4. The original response to Query No. 7 of the Statement of Financial Affairs, requiring disclosure of gifts states, "none." On January 10, 2006, the debtors amended the Statement of Financial Affairs to reflect weekly tithes.

5. Evidence of the debtors' payment for charitable contributions for the 2004 and 2005 calendar years is appended as Exhibit C.

On January 10, 2006, the debtors filed an amended statement of financial affairs indicating weekly tithes and offerings to First Assembly of God of approximately $103.00 a week. The debtors' charitable contributions during 2004 totaled $7291.00, for an average of $140 a week. The debtors' charitable contributions during 2005 totaled $4133.00, for an average of $79 a week; however, for the months of January through August, the debtors contributed $3328.00, for an average of $104.00 a week.

CONCLUSIONS OF LAW

■ The only issue before the Court is whether Congress intended that charitable contributions not in excess of 15 percent of a debtor's gross income are per se reasonable without further inquiry of the Court, or whether the Court needs to determine the reasonableness of the charitable contributions for purposes of a disposable income analysis.

Under 11 U.S.C. § 1325(b), a debtor must contribute all of his disposable income into a chapter 13 plan if a trustee or unsecured creditor objects to confirmation of the plan. Section 1325(b) provides, in relevant part:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor, including charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to a qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)) in an amount not to exceed 15 percent of

the gross income of the debtor for the year in which the contributions are made . . . .

■■■ 11 U.S.C. § 1325(b). Section 1325(b)(2)(A) was amended by the Religious Liberty and Charitable Donation Protection Act of 1998, Pub.L. No. 105–183 (1998) [the Act]. The amendment specifically included the recognition that charitable contributions that do not exceed 15 percent of a debtor's gross income may be excluded from the debtor's disposable income. One of the Act's purposes was to "protect[ ] the rights of debtors to continue to make religious and charitable contributions after they file for bankruptcy relief." H.R.Rep. No. 105–556 (105th Cong.), *reprinted in* Collier on Bankruptcy App. Pt. 41(*o*)(ii)(A), at App. Pt. 41–260 (15th ed. rev.)(2005). In passing the Act, Congress eliminated bankruptcy courts' subjective determination of reasonableness relative to charitable contributions and disposable income. The Act makes clear that a court "is not supposed to engage in a separate analysis to determine whether charitable contributions up to fifteen percent are reasonably necessary for the debtor's maintenance and support." *Drummond v. Cavanagh (In re Cavanagh)*, 250 B.R. 107, 112 (9th Cir. BAP 2000).

Despite the plain meaning of the statute, some courts have interpreted the Act to subject charitable contributions to two limitations. First, that the amount of the contribution cannot exceed 15 percent of the debtor's gross income, and, second, that the amount of the contribution itself is reasonable. *See In re Buxton*, 228 B.R. 606, 609 (Bankr.W.D.La.1999). According to the *Buxton* court, the Act, by allowing charitable contributions to be included with the debtor's living expenses, overturned a line of cases that prohibited any

charitable contributions by a chapter 13 debtor. However, because of the placement of the charitable contribution allowance language in the statute, the court reasoned that charitable contributions were still subject to the court's determination that the expense is reasonable.

This interpretation obviates the goal of the Act, "namely to protect certain charitable contributions from the consideration-based, cost/benefit oriented disposable income test." *In re Kirschner*, 259 B.R. 416, 422 (Bankr.M.D.Fla.2001). The *Kirschner* court explained this reasoning well:

> Allowing a court to apply a "reasonably necessary" qualification to the charitable contributions provision would thwart that stated purpose of [the Act]. Courts would be compelled by precedent and common sense to conclude that a religious gift could never be reasonably necessary for support in the same economic sense as food expenditures or the cost of transport to a place of employment. The only lasting effect of [the Act] would be to deprive courts of the power to find all such contributions unnecessary as a matter of law and thus provide a debtor with a futile evidentiary hearing at which to defend his contributions as reasonably necessary. Surely Congress did not intend [the Act] to serve such a limited purpose.

*Id.* at 422–23.

■■■ The statute requires a three step test to determine if a charitable contribution may be excluded from a debtor's disposable income. First, the contribution must be a "charitable contribution" as defined by § 548(d)(3). Second, the contribution must be made to a "qualified religious or charitable entity or organization" as defined by § 548(d)(4). The debtor tes-

tified that he tithes weekly to the First Assembly of God church in the amount of $104.00. Neither party introduced any evidence regarding the statutory standards relating to either a "charitable contribution" or a "qualified religious or charitable entity or organization." However, the trustee did not assert that the proposed charitable contributions did not meet the definitions contained in § 548(d)(3) and (d)(4). Therefore, the Court finds that the debtors' proposed contributions satisfy the first two standards.

The third standard is that the contributions must not exceed 15 percent of the debtor's gross income for the year in which the contributions are made. The parties stipulated that the debtors' proposed contribution of $416.00 a month constitutes 9.8 percent of the debtors' gross income. Therefore, based on the stipulations of the parties, the Court finds that the debtors' proposed contributions satisfy the third standard. The debtors' proposed charitable contributions fall within the amount allowed by § 1325(b)(2)(A) and will not be included in the debtors' disposable income for the purpose of plan confirmation.

The trustee objected to confirmation of the debtors' plan and asked the Court either dismiss the debtors' case under § 1307 or deny confirmation of the debtors' plan. The trustee offered no evidence to support dismissal of the case under § 1307, except the argument relating to the debtors' charitable contributions discussed above. Section 1325(a)(3) provides that in order to confirm a plan, the court must find that "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). The only testimony relating to the good faith filing of the debtors' plan came from the debtor. Specifically, the debtor stated that he regularly tithed to his church. In fact, the evidence that was introduced as a stipulation shows that historically the debtor has been tithing in an amount approximating his proposed charitable contributions. In the absence of any allegation by the trustee that the debtors' plan was not filed in good faith, the Court overrules the trustee's objection to confirmation and denies the trustee's request to dismiss the case under § 1307.

IT IS SO ORDERED.